# Staunton.

MERRIMAN v. COVER, DRAYTON & LEONARD.

September 21, 1905.

1. CONTRACTS—*Two Constructions—One Rendering Contract Void.*—Where a contract is susceptible of two constructions, by one of which it would be rendered valid, and the other void, the former will be given, if reasonable, as it will not be presumed that the parties intended to do that which they had no right to do.

2. CONTRACTS IN RESTRAINT OF TRADE—*Reasonable Restraint—Case at Bar.*— A contract in restraint of trade is valid, when founded on a valuable consideration, if the restraint imposed is reasonable as between the parties, and not injurious to the public by reason of its effect upon trade. Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interests of the public. Upon the evidence in the case at bar, the stipulation by defendants as private individuals and owners of a steam railroad, engaged in private carriage, that no chestnut oak bark shall be shipped over their road except to the plaintiffs, unless they refuse to pay the market price therefor at their own, or any other large tannery in that county, is reasonable as between the parties and does not injuriously affect the public, and hence is valid.

3. PLEADING—*Contracts Prima Facie in Restraint of Trade—Facts and Circumstances.*—In an action on a contract in restraint of trade, if the contract on its face is *prima facie* an unreasonable restraint on trade, the facts and circumstances showing the restraint to be reasonable may be averred in the declaration and proved on the trial, provided they do not vary, alter or contradict the terms of the contract.

4. PLEADING—*Answering Adverse Allegations—Case at Bar.*—A plea which professes to answer the whole of what is adversely alleged in the declaration, but fails to do so, is bad and should be rejected. In the case at bar the declaration alleges that the defendants, their successors or assigns, did build and operate the railroad in the declaration mentioned, but the plea denied that the defendants built and operated the road and did not deny that it was built and operated by their successors or assigns.

5. PLEADING—*Rejecting Plea—Evidence Under Other Pleas.*—The rejection of a plea is not a reversible error, when all that could have been proved under it was admissible under other pleas which were received.

6. CONTRACTS—*Illegality—Knowledge of Illegality—Agreement—Common Carriers.*—If the contract for the construction and operation of a railroad contains stipulations which a common carrier of freight cannot lawfully make, and it is known by the parties at the time the contract is made that the proposed road is to be constructed and operated as a common carrier of freight, such contract is illegal because contrary to public policy. It is not necessary that there should have been an agreement between the parties that the proposed road should be constructed and operated as such common carrier.

7. CONTRACTS IN RESTRAINT OF TRADE—*Reasonableness—Burden of Proof.*— Generally a party who seeks to enforce a contract in restraint of trade has the burden of proof to show that the restraint is reasonable, but if the contract shows on its face that it is reasonable, and the defendant seeks to avoid it by some extrinsic matter which renders it illegal, the burden is on him to establish such illegality by clear and satisfactory evidence.

8. CONTRACTS—*Time of Performance.*—Where a contract is silent as to the time within which an act is to be done, the law implies a reasonable time.

9. INSTRUCTIONS—*Sufficiently Instructed.*—It is not error to refuse correct instructions where the jury has already been sufficiently and correctly instructed on the points covered by the rejected instructions.

Error to a judgment of the Circuit Court of Giles county, in an action of *covenant* by Cover, Drayton & Leonard against E. B. Younken and W. E. C. Merriman, partners under the style of E. B. Younken & Co. Process was served only on Merriman. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The agreement which was the foundation of this action was in the words and figures following, to-wit:

"This agreement, made and entered into this the 18th day of September, 1899, between Thomas Cover, Loring A. Cover, H. E. Drayton and Thomas Leonard, partners in the name and style of Cover, Drayton & Leonard, and their survivors, successors and assignees, parties of the first part, and E. B. Younken and W. E. C. Merriman, partners in the name and style of E. B. Younken & Company, their survivors, their successors and assignees, parties of the second part; witnesseth:

"First. That subject to the conditions hereinafter set forth the parties of the first part do hereby grant unto the parties of the second part, the right to build a railroad over the land of the parties of the first part, in Giles county, Virginia—known as the Narrows Tannery property, which road is to begin at or near the little yellow house on the Tannery siding and run in a westerly direction not nearer than twenty feet from a bark shed and between the office building and stable, and on H. W. Hale's land.

"The said parties of the second part shall have the right to connect the said road with the main siding of the parties of the first part at or near the said yellow house, and the right to use said siding jointly with parties of the first part for railroad purposes from said connection to the Norfolk & Western Railway and to grant the Norfolk & Western Railway Company the right to use said siding in handling the business of the said parties of the second part; but said parties of the first part do not guarantee that said parties of the second part can use that part of said siding, that it is on the property of the Norfolk & Western Railway Company, nor do the parties of the first part guarantee to the parties of the second part the right to connect with the Norfolk & Western Railway Company. The right of way for a railroad herein granted shall only be as wide as may be necessary, and shall not exceed ninety (90) feet in width at any point.

"Second. The rights herein granted to said parties of the second part shall cease and become void unless they shall within two years from this date build a railroad of standard gauge from said authorized connection at said siding at least so far as the Boyd place on Wolf creek in said Giles county, a distance of six miles more or less.

"Third. The said siding is not to be blocked by parties of the second part, and not to be so occupied with rolling stock nor used so as to interfere with the business or traffic of the parties of the first part over said siding.

"Fourth. Sufficient and suitable cattle guards are to be built by the parties of the second part on the road over the tannery property; all fences and gates are to be put in as good condition by parties of the second part as they are when they begin building the road.

"Fifth. As compensation for the use of the siding as herein granted said parties of the second part will furnish or have furnished all ties required to keep it in repair, and will place them in the track, and will also pay half of the costs of any new rails that may be necessary to keep the siding in good condition.

"Sixth. The parties of the second part are to be responsible to the Norfolk & Western Railway Company for any accident that may occur to any property of said railway company by reason of the use or permission to use said siding.

"Seventh. If the parties of the second part shall fail to complete and operate the said road as far as the Boyd place, or further as aforesaid, within two years from this date, they are to compensate the parties of the first part for all damages to their property occasioned by the building of said road, in whole or in part, on the said land, said damage to be ascertained by abritrators, each party to select one abritrator and the two arbritrators an umpire.

"Eighth. The parties of the second part agree that no locomotive belonging to or used by them shall during the night time enter the railroad on said Tannery property.

"Ninth. The parties of the second part agree that no chestnut oak bark shall be shipped over their road, no matter how far it extends, except to the parties of the first part, unless the parties of the first part refuse to take said bark at the market price.

"The parties of the second part are to notify the parties of the first part on or before the 15th day of January of each

year how much bark they desire to furnish over said road, and the parties of the first part are to name the amount of bark they are willing to take at the market price, and said parties of the second part will deliver it at said tannery.

"By 'market price' is meant price paid at said tannery or at any other large tannery in Giles county, Virginia, for bark delivered at said tannery or tanneries. The rates for shipment of bark over said road to parties other than the parties of the first part shall be at least as high as the rate charged for shipment to the parties of the first part.

"Tenth. The said parties of the first part have a private road on their said tannery property between the scales and the public road, and the railroad to be built by the parties of the second part will be built across and below the grade of said private road. The parties of the second part will either erect a suitable bridge over their railroad where it crosses said private road, and build easy and convenient approaches to said bridge for both sides, or they will build for said parties of the first part easy and convenient approaches and road to and over said crossing.

"If a bridge is built, the parties of the second part will keep it in repair and in good condition, and said bridge and road to be built shall be suitable for heavy wagon hauling. The main water pipe leading from the mountain to the tannery shall, if necessary, be sunk by the parties of the second part at the point where the railroad tract will cross it and be properly protected.

"Eleventh. Should the parties of the second part fail at any time to operate the railroad to the Boyd place, or beyond for a period of two years, or should they fail to keep any of their aforesaid agreement, then all the rights and privileges herein granted to them shall forever cease, and shall revert to the parties of the first part.

"Twelfth. The parties of the first part can make any connection or connections in the railroad tract of parties of the second part that they see proper for siding or sidings on their land.

"This agreement is signed in duplicate, each copy to be treated as an original.

"Witness the following signatures and seals.

| | |
|---|---|
| "THOMAS COVER, | (Seal) |
| "L. A. COVER, | (Seal) |
| "H. E. DRAYTON, | (Seal) |
| "THOS. LEONARD, | (Seal) |
| "E. B. YOUNKEN, | (Seal) |
| "W. E. C. MERRIMAN. | (Seal)" |

*John H. Fulton, Sam'l W. Williams* and *Edward W. Robertson,* for the plaintiff in error.

*Archer A. Phlegar* and *Barton & Boyd,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action of covenant upon an agreement entered into by the defendants in error, as partners doing business under the firm name of Cover, Drayton and Leonard, and the plaintiff in error and another, doing business as partners under the firm name of E. B. Younken & Co.

The principal question involved in this writ of error is whether or not the contract sued on is in restraint of trade and contrary to public policy, and therefore void.

At the time of the execution of the contract, the plaintiffs, parties of the first part, were the owners of land in Giles county near the mouth of Wolfe creek, upon which they had a tannery, and were engaged in the manufacture of leather. Upon their premises was a railroad siding or track owned and controlled by them, which connected with a siding of the Norfolk and Western Railway, whose line passes through the plaintiffs' premises. The parties of the second part wished to build a

railroad up Wolfe creek at least as far as their property, a distance of about six miles.    In order to do this they deemed it advisable to get the right to build their road over the plaintiffs' premises, and to connect with and use the latter's siding, which connected with the Norfolk & Western Railway.    In consideration of those rights which the contract sued on grants them, the parties of the second part, among other things, agreed, "that no chestnut oak bark shall be shipped over their road, no matter how far it extends, except to the parties of the first part, unless the parties of the first part refuse to take the said bark at the market price."    The declaration sets out the contract in full, the circumstances under which, and the purposes for which, it was entered into, the building of the road, and assigns as a breach thereof the failure and refusal of the defendants to deliver to the plaintiffs the chestnut oak bark shipped over their road during the season of 1902 as they had agreed to do.

The plaintiff in error, the only one of the parties of the second part upon whom process was served, demurred to the declaration.    The action of the court in overruling his demurrer is assigned as error.

The grounds of demurrer chiefly relied on here, and which require special notice, are that the declaration, by setting out in full the contract sued on, shows on its face that it was *prima facie* illegal and void, in that it was a contract in restraint of trade, and particularly against public policy, and, second, that the averments of the declaration are not sufficient to exclude such presumption.

It is conceded by the plaintiff's counsel, as we understand their arguments, that if the parties of the second part had been an incorporated railway company the contract would be illegal, and that their action could not be maintained.

When the contract was entered into, the parties of the second part were partners and not an incorporated railway company. While there is language in the contract from which it might be

inferred that the road to be built was to be operated as a common carrier of freight for hire, there is other language from which it could be inferred with as much reason that it was not to be so operated.

Where two constructions may be given a contract or a statute, one of which would render it valid and the other of which would destroy it, the former construction wil be given it if reasonable, for in such a case neither the contracting parties nor the Legislature will be held to have intended to do that which they had no right to do. *Martin* v. *South Salem, &c., Co.,* 94 Va. 28, 37, 26 S. E. 591; 9 Cyc. 586.

Having reached the conclusion that the contract upon its face does not show that the road to be built was to be a common carrier for hire, is the restraint imposed upon the defendants by the contract contrary to public policy?

The early English cases seem to have treated all restraints upon trade, whether limited or unlimited, as contrary to public policy, and therefore void. That doctrine, as the conditions of society and trade have changed, has been modified from time to time.

In the case of *Reynolds* v. *Mitchell,* 1 P. Wms. 181, decided nearly two hundred years ago, in which many, if not all, of the cases were reviewed, and which has been referred to as "the foundation of the rule in relation to the invalidity of contracts in restraint of trade," Chief Justice Parker was of opinion that general restraints, or restraints extending to the whole kingdom, were void; that particular restraints, or restraints as to particular persons or places, if made upon a good and adequate consideration, and under circumstances which showed that it was reasonable for the parties to enter into them, were valid. And to the same effect are the earlier American cases. But in some of the later cases, both in England and this country, there has been a tendency to ignore the distinction between general and parital restraints, and to hold that restraints are valid and enforcible when they are not greater than are necessary for

the fair protection of the convenantee in respect to the subject matter of the contract, and not injurious to trade in general. See note to *Richards* v. *Am. Desk, &c. Co.,* 10 Am. R. R. & Corp. Rep. 99, 107, and following, where many cases are collected showing generally the history and course of decision on the subject; 24 Am. & Eng. Ency. of Law (2nd Ed.), 843, *et seq.,* and cases cited; 9 Cyc. 525 and cases cited.

But whatever may be the better rule, where the restraint is general, it is well settled that where the restraint is limited, and there is a valuable consideration to support it, the contract is valid if the restraint imposed is reasonable as between the parties, and not injurious to the public by reason of its effect upon trade.

Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interest of the public. *Horner* v. *Gaves,* 7 Bing. 735 ; *Ross* v. *Sadgbeer,* 21 Wend. 166 ; *Oregon Steam Nav. Co.* v. *Winsor,* 20 Wall. 64, 22 L. Ed. 315.

The restraint in the contract under consideration is limited. It does not prevent the defendants from carrying on their business, or abridge their rights in any respect other than that no chestnut oak bark shall be shipped over their road except to the plaintiffs, unless they refuse to pay the market price therefor at their own or any other large tannery in that county. As between the parties such a restriction does not seem to be unreasonable. It would hardly be seriously insisted that a land owner who was operating a flouring mill upon his lands would not have the legal right, in granting another private individual a wagon way over his land, to make it a condition to the exercise of such right, and as a consideration therefor, that no wheat should be hauled over that wagon way except for the mill owner, unless he refused to take it at the market price. The fact that the right granted is for a steam railroad, where the parties are private individuals, does not affect the question.

Neither does the restriction injuriously affect the public. Before the contract was made the defendants had no right to haul anything over the plaintiff's lands for sale to the public. By virtue of the contract they acquire the right to haul all commodities over it without restraint, except chestnut oak bark. If the contract has any effect upon the rights of the public, it enlarges rather than lessens them.

But if the contract on its face were *prima facie* an unreasonable restraint upon trade, the averments of the declaration as to the circumstances under which, and the purposes for which, it was entered into, if such averments can be considered, exclude that presumption. It is true, as argued, that averments of facts are not proper in a declaration which add to, vary, or otherwise alter the contract sued on, and that such averments are not admitted to be true by a demurrer to the declaration since a demurrer only admits such facts as are well pleaded. *Thomas* v. *Jones,* 21 Gratt. 96; *Newberry Land Co.* v. *Newberry,* 95 Va. 123, 27 S. E. 899. But, in determining whether or not a contract in restraint of trade is reasonable, each case must be considered in the light of its own facts and circumstances. *Oregon Steam, &c. Co.* v. *Winsor, supra.* This being so, such facts and circumstances, in so far as they do not add to, vary, or otherwise alter the writing sued on may be shown by proof, and it would seem to follow as a matter of course that they may be averred in the declaration.

In the case of *Ross* v. *Sadgbeer,* 21 Wend. 166, 168, it was said by the Court of Appeals of New York, that "although it does not appear on the face of the contract that there was good reason for making it, the plaintiff may, I think, help out his case by proper averments in pleading. See *Mitchell* v. *Reynolds,* 1 P. Wms. 181; *Homer* v. *Ashford,* 3 Bing. 322. Such averments will not contradict the deed, because that expresses no consideration whatever; and if the special circumstances were such as will uphold the contract of the parties I see no very

good reason why the plaintiff should not be allowed to aver and prove them. The point seems never to have been directly adjudged, and perhaps we ought not to pass definitely upon it in a case where the question has not been discussed by counsel."

In *Richards* v. *Am. Desk, &c. Co.* (Wis.), 10 Am. R. R. & Corp. Rep. 99, 105, 58 N. W. 787, it was held that a pleading would be bad on demurrer if it did not appear from the contract or averments of extrinsic facts that the restraint was reasonable. This, said the Supreme Court of Wisconsin in that case, was in accord with the great weight of authority, and seems to be the necessary result of the rule as to the validity of such restraint.

Construing the contract in the light of the circumstances under which, and the purposes for which, it was executed, as averred in the declaration, we are of opinion that the demurrer to the declaration was properly overruled.

The trial court rejected pleas numbered 1 and 2, offered by the defendant. This action of the court is assigned as error.

Plea No. 1 professes to answer the whole of what is adversely alleged in the declaration, but in fact does not do so. The contract provides that the railroad mentioned therein may be constructed and operated by the parties of the second part, their successors, or assigns. The declaration follows the language of the contract; yet the plea denies that the parties of the second part built and operated the road, and does not deny that it was built and operated by their successors or assigns. All that is in the plea may be true, and yet the plaintiff be entitled to recover. The plea was clearly bad, and was properly rejected. *Hurt's Admr.* v. *Martin's Admr.*, 8 Gratt. 578.

No prejudice resulted to the defendant from the rejection of plea No. 2. All that could be proved under it was admissible under pleas 7 and 8 which were received.

The action of the court in refusing to give certain instructions asked for by the defendant, in refusing to give certain other instructions as asked, and in giving them as amended, and in giving certain instructions asked for by the plaintiffs is assigned as error.

There was evidence tending to prove that it was known to the plaintiffs that the railroad to be constructed was to be operated as a common carrier; that the company to construct and operate it was to be chartered by the General Assembly as a common carrier of freight and passengers; that the contract sued on was entered into with such knowledge on the part of the plaintiff, and, after such company was so chartered, the contract sued on was assigned to the chartered company; that this assignment was made with the consent of the plaintiffs on condition, however, as shown by the assignment, that the chartered company should assume and carry out all the covenants of E. B. Younken & Co. set out in the contract sued on, and on the further condition that Younken & Co., individually, and as partners, should not be released from the performance of such covenants.   It further appeared that the chartered company, after the assignment, completed the road, and have since been operating it.

Instruction No. 1, as offered by the defendant, was as follows:

"The court instructs the jury that, by virtue of the character of railroad companies as common carries of goods, they are under a general duty to receive and carry, when properly offered, all goods of the kind they undertake or assume to transport, and that a contract by which they undertake to carry for one person or corporation to the exclusion of others, is contrary to public policy and void; and if they believe from the evidence that at the time of making the contract in the declaration mentioned, it was known and *contemplated* by and between the parties that the railroad to be built, provided for in said contract, was to become a common carrier of freight and passengers, and that, in pursuance of such *contemplation,* the General Assembly of Virginia granted a charter of incorporation to W. E. C. Merriman, E. B. Younken and others under the name of the New River, Holston & Western Railroad Company, whereby it became empowered to construct, operate, and maintain said

railroad for the purpose of carrying passengers and freight, and did after the passage of said act of incorporation enter into, in pursuance of the original understanding and contemplation of the parties, a contract dated the 4th day of June, 1901, under which it assumed and agreed to carry out the said contract in the declaration mentioned, then the court instructs the jury that said two contracts are to be considered as one; and they are contrary to public policy and void, and the jury must find for the defendant.

For the word "contemplated" in that instruction the court substituted the words "mutually understood and intended," and for the word "contemplation" next following the court substituted the words "knowledge and intention." This action of the court it assigned as error.

It seems that in England, where the agreement is not itself in violation of law, but the intention of one of the parties is unlawful, as where goods are purchased or money is borrowed for an unlawful purpose, the mere fact that the party selling the goods or loaning the money knows of such unlawful purposes renders the agreement illegal, and it cannot be enforced.

In this country, while some of the courts have followed the English rule, the majority have taken a different view, and have held that the mere knowledge of the seller or the lender that the purchaser or borrower intends to make an illegal use of such goods or money is no defense to an action for the purchase price. 9 Cyc., 570-571, and notes citing English and American cases.

Which of these rules is the better need not be considered, as that is not the question involved in this case. If it was known by the plaintiffs, when the agreement sued on was entered into, that the proposed railroad was to be constructed and operated as a common carrier of freight, as alleged in special pleas 5 and 9, and as stated in the instruction under consideration, the contract was illegal, because contrary to public

policy, for no one has a right to enter into an agreement for a consideration which he knows cannot be furnished, or the obligation imposed by it cannot be performed by the other party without a violation of law.

It was not necessary, therefore, that there should have been an agreement between the parties that the proposed railroad was to be constructed and operated as a common carrier, as counsel for the plaintiffs insist, and as the court seems to have thought when it modified the instruction under consideration.

And for like reasons the action of the court in modifying the defendant's instructions Nos. 2 and 3, and in giving the plaintiff's instructions numbered 1 and 2 was erroneous. A further objection made to the plaintiffs' instruction No. 2 is that it imposed upon the defendant the burden of proving clearly and unequivocally that it was known and mutually understood and intended by the parties that the road to be built was to be constructed and operated as a common carrier.

The general rule is that a party who seeks to enforce a contract in restraint of trade must show that it is reasonable and the burden of proof was on the plaintiffs to do this. *Mitchell* v. *Reynolds, supra; Ross* v. *Sadgbeer, supra; Richards* v. *Am. Desk, &c. Co.,* 10 Am. R. R. & Corp. cases, and notes 99, 105, 171-2. But if the contract upon its face shows that it is reasonable, as in this case, and the defendant seeks to avoid it by some extrinsic matter which renders it illegal, the burden is upon him to establish such illegality, as in other cases where the illegallity of a contract is set up as a defense to a contract valid upon its face, by clear and satisfactory evidence. *Burdine* v. *Burdine,* 98 Va. 523, 36 S. E. 992, 81 Am. St. Rep. 741; 9 *Cyc.,* 762; *Sissons* v. *Dixon,* 12 E. C. L. 371; *U. S.* v. *Trans. Freight Asso.,* 58 Fed. 58, 78, 7 C. C. A. 15, 24 L. R. A. 73; *McBiatney* v. *Chandler,* 31 Am. Rep. 213, 215.

By the terms of the contract the defendants were to notify the plaintiffs on or before the 15th day of January of each year how much bark they desired to furnish over said road, and they

(the plaintiffs) were to name the amount of bark they were willing to take at the market price.   Instructions numbered 4 and 5, as offered by the defendant, in effect told the jury that if the defendants on or before the 15th day of January, 1902, named the amount of bark they desired to ship the plaintiffs, that it was the duty of the plaintiffs at once to name the amount of bark they would take.

As the contract did not fix the time when the plaintiffs were to say how much bark they would take, the law implied that they had a reasonable time within which to do so.   (*Young* v. *Ellis,* 91 Va. 297, 301, 21 S. E. 480; *Wilcox* v. *Southern Ry Co.,* 99 Va. 394, 39 S. E. 144), and the court properly modified the instructions in that respect.

What has been said in reference to the defendants' instructions Nos. 4 and 5 applies equally to the objections made to the court's action in giving the plaintiffs' instruction No. 4.

The refusal of the court to give instructions numbered from 7 to 13 inclusive, offered by the defendant, is assigned as error. No reason is given in the petition to sustain this assignment of error, and it seems to be little relied on in the briefs.   It will, therefore, be sufficient to say that in so far as they announce correct principles of law applicable to the case such principles were substantially embraced in the instructions which were given, and there was no error in the court's refusing to give them.

As the judgment of the Circuit Court will have to be reversed, the verdict set aside and a new trial granted because of erroneous instructions given, as hereinbefore pointed out, it will be unnecessary to consider the remaining assignments of error as to the refusal of the court to arrest the judgment, and set aside the verdict for the reasons set out in the defendant's bill of exceptions Nos. 3 and 4.

*Reversed.*