# Staunton

S. R. STONEMAN V. E. C. WILSON.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

*H. P. Burnett, S. S. Browning* and *Mrs. Margaret Browning,* for the appellant.

*George P. Young, Jack M. Matthews* and *S. B. Campbell,* for the appellee.

HOLT, J., delivered the opinion of the court.

This cause deals with a contract charged to be in restraint of trade. Appellee, E. C. Wilson, plaintiff in the court below, has been awarded injunctive relief and from that decree the defendant, S. R. Stoneman, appellant, has appealed.

The J. C. Matthews Company, a corporation, doing a retail and wholesale hardware business in the town of Galax, has a capital stock of $30,000. Two-thirds of it is owned or controlled by J. Ed. Matthews and one-third was owned by Stoneman. That third was bought and sold under this contract, which plaintiff claims has been violated:

"January 8th, 1935.

"This agreement entered into this the 8th day of January, 1935, between Everett Wilson party of the first part and S. R. Stoneman party of the second part.

"The party of the first part in consideration for $10,000.-00 stock in J. C. Matthews Co. agrees to pay the sum of $8,000.00 on terms agreeable to both parties. He further agrees to pay to the party of the second part the dividend on the stock that is paid from the earnings of the year 1934.

"The party of the second part agrees not to go in the Hardware business for a period of 5 yrs. in Galax, Va. or a radius of five miles.

"The settlement is to be made February 1st, 1935, at which time all papers will be dated and interest is to begin at that date.

"The party of the first part to bind this deal until Feb. 1st, 1935, agrees to pay the party of the second part the sum of one hundred dollars for good faith and fulfillment of the above contract.

"This 8th day of January, 1935.

E. C. WILSON.
S. R. STONEMAN.

Witness:
        FRED J. ROBERTS."

The Matthews Company was organized in 1921 with Stoneman as one of its stockholders. He was its secretary and treasurer and for a time was its purchasing agent. Mr. Matthews tells us that his salary was $250.00 a month. This sum was changed from time to time, but we are not told just what the changes were. He was a competent hardware man but was intemperate in his habits and for that reason was discharged by Mr. Matthews in 1934. On April 1, 1936, he went to work as a clerk for the Galax Hardware Company at a salary of $75.00 a month. On April 4th of that year the bill in this cause was filed. To it a demurrer was interposed and an answer filed. Depositions were taken and a final decree was entered on June 29, 1936, which, as we have seen, sustained plaintiff's contentions.

The contract of January 8, 1935, was drafted by Fred J. Roberts, cashier of the First National Bank of Galax. As originally drawn its third clause read: "The party of the second part agrees not to enter in any way in the hardware business for a period of five years in Galax, Va., or a radius of five miles." At the instance of Stoneman the word "go" was substituted for the word "enter" and the words "in any way" were marked out. Wilson tells us why these changes were made:

"Sid (Stoneman) in writing that thing said that there was a few articles or items in some business where they handled a few hardware items, and he said it might interfere with him getting a job in what you might say a general store, or may be a Five and Ten Cent Store. That's the way I understood it absolutely."

Roberts said:

"Q. Now, Mr. Roberts, did Mr. Stoneman say there that he would agree not to work or clerk for a hardware business in Galax?

"A. I don't recall whether he agreed at that time or not, but stated that he would not go in the hardware business—

I don't know whether he said clerk—I don't know whether that word was mentioned or not."

And again:

"Q. And he (Stoneman) made the statement that if he ever wanted to go into business, open any kind of store, that the contract would cut him out from it?

"A. Yes, sir; that is where hardware is concerned, they talked it over and he didn't want to infringe on Everett's business with the hardware business, and that was what Everett was after. He didn't want it where he could damage him, but Mr. Stoneman left the impression, and made the statement that he was not going in the hardware business or be connected with the hardware business for it would damage the J. C. Matthews; his knowledge of the hardware business would damage the Matthews Company, and said he had no intentions of going in business in Galax, or a radius of five miles."

Stoneman said that no mention whatever was made of the possibility of his securing the position of clerk in another hardware store. This then was the situation on January 8, 1935. Wilson was not satisfied as to the construction which might be put upon the third clause of the contract and so, possibly at the suggestion of Roberts, who had drawn it, had counsel prepare another which, with meticulous care, made it plain that Stoneman should not secure employment of any kind or do business of any character like that now in controversy.

Pursuant to the fifth clause of the contract already signed, the parties met together on February 1, 1935, at which time Wilson presented to Stoneman for his signature this new contract drafted by his counsel. Stoneman bluntly refused to sign it. With his contention thus made plain, Wilson then elected to stand upon his rights, whatever they were, and to go ahead. He made the cash payment, gave his notes and did all that could be expected of him under that already signed.

Afterwards, as we have seen, Stoneman was employed by the Galax Hardware Company. His evidence is that he had nothing to do with its management and nothing to do with its price fixing, price cutting or purchasing; that he is a clerk and nothing more and in that capacity has made some minor solicitation for trade to customers, some of whom had dealt with the Matthews Company.

Since he went to work on April 1, 1936, and since this suit was instituted on April 4th of that year, it is plain that no damage had then been done, and we think that any diversions of trade from one company to the other have been *de minimis* when evidence in this cause was taken. The business of the Matthews store may have to some extent fallen away but that cannot be charged to Stoneman. The evidence does not show it.

By early common law any limitation upon the right of one to work was against public policy. Later this rule was relaxed, particularly where there were limitations both of space and time, and in the United States generally these agreements are valid. This in turn is subject to a further condition, they must not injuriously affect the public, and they must be reasonable. 13 C. J., pp. 468, 472; Williston on Contracts, vol. 3, sections 1634 and 1636. One may not be restrained from following all vocations for which he is fitted. Such restraint would be against public policy and might make him a public charge. Moreover they must be incidental to and in support of another contract or sale by which the covenantee acquires some interest needing protection. 13 C. J., p. 477. They are not favored in law and courts are slow to grant injunctive relief. *Bowers* v. *Whittle*, 63 N. H. 147, 56 Am. Rep. 499; High on Injunctions, 473.

The contract under review is not unreasonable and in it the public has no substantial interest. Has it been violated? Did Stoneman "go in the hardware business" when he secured a position as clerk with the Galax Hardware Company?

■ Ordinarily one who secures a position as a mere clerk for a corporation cannot be said to have gone into that business which it is conducting. Plainly a clerk for the Steel Corporation is not in the steel business as that term is ordinarily understood, although a sole clerk in a country store who buys eggs and sells a suit for $9.50, when the would-be purchaser did not have the necessary $10.00, may fairly be said to be in the mercantile business.

■ If Stoneman's duties, powers and responsibilities are substantially those which rested upon and were exercised by him when working for the Matthews Company, he has violated the spirit of his contract, if not its letter. *Kramer* v. *Old*, 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. Rep. 650.

Contracts with employees often come under review and "have frequently been upheld whereby salesmen, agents, canvassers, and other employees who come into personal contact with their employer's customers agree not to engage in a competing business within a limited time or area after leaving their employer's service." 13 C. J., p. 485.

These cases usually violate express provisions of the contract. Had Stoneman signed that presented to him on February 1, 1935, his case would come within that class. These are typical examples of those in which restraining contracts have been upheld.

■ In *Smith* v. *Webb*, 176 Ala. 596, 58 So. 913, 914, 40 L. R. A. (N. S.) 1191, a retiring partner covenanted: "I further agree for the above consideration not to engage in the livery business in opposition to T. J. Smith in Pell City." It was held that this contract was violated when he became the manager of a rival stable. One who is a manager of a business is engaged in its conduct.

In *Siegel* v. *Marcus*, 18 N. D. 214, 119 N. W. 358, 20 L. R. A. (N. S.) 769, it appears that one pawnbroker sold to his partner his interest in the business and agreed not to engage in that business with any partner, partners, firm, company or corporation for a specified period. Afterwards he was instrumental in causing a rival business to be

established. He purchased stock for it and was active in its conduct and management. Plainly the spirit and provisions of his contract were violated.

█ The character of the employment is often important. "The fact that the employment is of such a character as to inform the employee of business methods and trade secrets which, if brought to the knowledge of a competitor, would prejudice the interests of the employer, tends to give an element of reasonableness to a contract that the employee will not engage in a similar business for a limited time after the termination of his employment, and is always regarded as a strong reason for upholding the contract." Note, Am. & E. Anno. Cases, vol. 8, p. 156.

█ An excellent statement of the considerations to be remembered appears in 6 R. C. L., p. 1019:

"It may be suggested that the mere engagement as an employee in a rival business is not determinative of a breach of such a covenant, but the inquiry must be as to the effect of such employment upon the business sought to be protected; and this effect will depend in part upon the nature of the business, and in part upon the participation of the employee in its control. The test to be applied to the question whether an agreement not to engage in a certain business is violated by accepting employment in that business has been said to be whether in its scope and character the employment is such as to result in all likelihood in substantial interference with the business which was the subject of the contract. The nature of the business which the party abandons, and the natural and reasonable effect of the new employment upon it, are to be considered. In such cases there is a patent distinction, it has been said, between a mere servantship in a business and the managership thereof. One is subordinate—inconsequential in affecting the general popularity and success of the enterprise—while the other is dominant, controlling, influential, in its appeal to public favor, and hence in its inevitable effect upon the success of the business." *Brandenburger* v. *Martin,* 225 Ill. App. 439; *Eastern Express Co.* v. *Meserve,* 60 N. H.

198; *Haldeman* v. *Simonton,* 55 Iowa 144, 7 N. W. 493; *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 108 A. 541, 99 A. L. R. 1450.

It is contended that Stoneman is an extraordinary salesman, unusually persuasive and has a large personal following. The record does not bear this out. He had friends, as other men have friends, who, with other things equal, prefer to trade with him. He took with him no trade secrets, and there had been entrusted to him no confidences which he might betray. Formerly he was secretary-treasurer and at times buyer for his firm. Now he is a clerk for another, with no more authority than clerks are ordinarily entrusted with. His salary with the Matthews Company was around $250.00 a month; it is now $75.00. Certainly his value as an employee in latter years was not impressive for he was discharged.

The substance of our conclusion is this: Stoneman should not be permitted to occupy with the Galax Company substantially the position which he held with the Matthews Company. Proof of that fact should be clear, but it has not been forthcoming. Since it is not clear and is not forthcoming, he should not be enjoined.

Under these restraining contracts, fair protection is all that can be demanded. *Merriman* v. *Cover, Drayton & Leonard,* 104 Va. 428, 51 S. E. 817.

They are within limits indicated legal, but they must be established by clear and satisfactory proof in order to justify a court in restraining their breach by injunction. *Klaff* v. *Pratt,* 117 Va. 739, 86 S. E. 74; *Norfolk Motor Exchange, Inc.* v. *Grubb,* 152 Va. 471, 147 S. E. 214, 63 A. L. R. 310; *Burchell* v. *Capitol City Dairy,* 158 Va. 6, 163 S. E. 81.

The decree appealed from should be reversed and this cause dismissed. It is so ordered.

*Reversed.*