## CIRCUIT COURT OF FREDERICK COUNTY

Raymond L. Fish

v.

Trevor J. Collins

February 18, 1987

Case No. (Chancery) C-86-141

## By JUDGE ROBERT K. WOLTZ

This proceeding involves a dispute over the enforceability of a non-competition covenant contained in an employment contract between the complainant and the defendant, both of whom are veterinarians. The employment has terminated. By this suit the complainant former employer seeks an injunction and damages against the defendant former employee based on the covenant. After previous *ore tenus* hearing on application for a temporary injunction, a conditional and limited injunction was awarded against the defendant for reasons set out in prior written opinion. Further *ore tenus* hearing having been had, decision is now made whether permanent injunction should be granted and, if so, the extent and terms of it.

By way of preliminary, the final point of defendant's demurrer on the ground that the bill of complaint is defective because it prays for monetary damages in addition to injunctive relief is overruled. The cases are numerous that if equity jurisdiction is invoked *bona fide* all related ancillary matters may be resolved in the proceeding, including those which standing alone would be subject only to jurisdiction at law.

The contract became effective November 1, 1984, and was to remain in effect for one year, at which time it was to be renegotiated "to the satisfaction of both

parties." The defendant was the employee of the complainant at an annual salary of approximately $35,000 per year. It covered a number of items, such as transportation expense, disability and professional liability insurance, vacation and sick leave provisions, attendance and expenses at conferences and other matters. The complainant, unaided by legal assistance, was the scrivener of the one-page eleven-paragraph agreement. The eighth paragraph is the subject of controversy and provides:

> Should you leave your practice with me for what ever reason it is agreed that you not enter into any new competing practice situation within a redius (sic) of 25 miles for a period of 5 years. It is further understood that in this event all practice records and files shall remain my property.

The complainant has practiced for twenty-eight years, twenty-three in Frederick County. Of those eighteen years were with the Winchester Animal Hospital until August, 1983. He then sold his interest in it, thinking of retirement but refusing to enter a non-competition covenant, and about a month later established practice as a sole proprietor in the Frederick County settlement of Clearbrook.

The defendant at the time of entering the contract was forty years of age, a native of Australia and has a United States permanent resident's visa. He holds a degree in veterinary science from the University of Queensland, Australia, and graduate diplomas or degrees from the University of Edinburgh, Scotland, and the University of California, Davis. His training and experience have been mostly in the field of large animals, particularly "food animals" and especially with dairy cattle. For nearly three years he had been a clinical instructor and assistant professor in the Virginia-Maryland Regional College of Veterinary Medicine at Virginia Polytechnic Institute and State University. He has been licensed in Australia, Great Britain, California, Maryland and Virginia. Shortly before the contract he became board certified in theriogenology, a specialized branch of veterinary medicine concerning animal reproduction and its problems.

The parties first became acquainted when the complainant called for assistance from the veterinary college on problems in a herd of cattle of one of his clients. The defendant made several trips in this regard and eventually the problems were largely abated. The parties discussed a possible association and two months after the complainant established his new practice the employment contract was made. The complainant then introduced the defendant and publicized and promoted him and his qualifications in various ways.

The complainant as employer found no fault with the defendant's work and held his professional abilities in high regard. Nor does the evidence disclose any personality conflicts or serious disagreements between the two. Their association, however, was proving unprofitable to the employer. Two months before the expiration of the one-year period covered by the contract, the complainant showed the defendant figures on their respective production of income up to that time. Complainant stated as employer he was losing money on the defendant at his present salary and could not afford to keep him if the receipts of the practice did not increase greatly. Complainant offered to renew or extend the contract on the basis of either 30% or 35%, depending upon a contingency, of the gross income defendant produced. After considering this offer for a couple weeks, the defendant stated he could not accept it as it was too low. No further proposals were made, and the employment ended at the expiration of the one-year term.

The defendant has remained in this area and seven weeks after leaving the employment entered into a contract with Winchester Animal Hospital, the entity with which complainant had been until two and a half years before, by the terms of which he was "an independent contractor." As such he was "to perform all veterinary services related to the hospital's food animal practice and be entitled to one-third of all fees for work performed at the hospital." In addition, he was to perform various testing at a livestock exchange, the proceeds from this work up to a specified sum to be "turned over" to the hospital, after which the complainant would retain all further proceeds from that source. Additionally, defendant was to reimburse the hospital for laboratory fees and drugs

used, be responsible for his own liability insurance, hold the hospital harmless from any claims resulting from his rendering veterinary services and pay a specific amount for use of certain of the hospital's equipment.

The livestock exchange has been a long-time client of the hospital. A client list submitted in evidence by the complainant shows that the hospital has served many of those persons before and since the complainant sold his interest in it. The hospital has a contract with the livestock exchange and is paid directly by the exchange for the work defendant does there. The defendant has served a number of people appearing on the complainant's client list but the evidence is not clear whether this has been done on his own or through the animal hospital or both.

After the defendant left him, the complainant noticed that the gross income of his practice soon began to drop, though his new practice had been growing before that. The decline in gross income was steady and up to $3,000 per month but after a few months the decline bottomed out and the gross began again to increase. He further testified that he is financially better off now without the defendant than he was with him, but that his practice with the defendant was probably 60% with large animals and 40% in other areas and that now less than 50% of his practice is in the large animal field. He also testified that while he believes the defendant is serving a substantial number of persons on his client list he is unable for reasons of professional ethics to inquire of them on this. He further testified that a five-year restriction on competition was reasonable as the client relationship often does not last longer than that, the clients frequently tending to forget and drift away. No evidence contrary to this was presented.

The evidence shows that there are about fifteen veterinarians practicing in the area, that the complainant's practice generally extends to the east a bit less than one-half the 25-mile radius, somewhat less than 25 miles to the north, something approaching 25 miles to the south and up to 35 or 40 miles to the west. Complainant stated that the defendant's gross fees during their year together were $30,000 to $35,000. On that basis complainant's new employment offer would have resulted in a salary of $10,000,

or about a 70% reduction. There is no evidence that the complainant used improper means to induce the defendant to enter the contract or was acting in bad faith in suggesting the reduced compensation to the defendant as a condition of renewing it.

Complainant testified that the five-year 25-mile restrictive covenant was a common or trade practice among veterinarians in the area, that it had been part of the agreements he had had with eight employees but not with two. He called Dr. William Truban, a veterinarian in Shenandoah County adjoining on the south, as an expert witness to establish the prevalence of the five-year-25-miles restrictive covenant in employment contracts among veterinarians in the area. Without objection he so testified and also that over approximately the last twenty years he had had thirteen associates, with all of whom save his own son he had such a covenant in the contract of employment, and to his knowledge gained over many years this provision was universal in the area. He was not aware of the two exceptions to this related by the complainant nor that the defendant's covenant with Winchester Animal Hospital provided for non-competition only in food animal practice for two years after ceasing employment, with no geographical limitation stated. Though the witness was impeached to this extent, no other evidence was introduced rebutting his testimony.

Review of the principles applicable to contracts containing non-competition covenants as explicated by the cases in this jurisdiction is instructive. They appear as follows:

(1) At early common law limitation on one's right to work and earn a livelihood was against public policy. *Stoneman v. Wilson*, 169 Va. 239, 245 (1937). Restraint on one's right to follow a gainful occupation is in restraint of trade. *Richardson v. Paxton*, 203 Va. 790, 794 (1962). Consequently such agreements involve the public interest. The former common law rule has been relaxed in American jurisdictions and such agreements when subject to recognized legal bounds are generally valid. *Stoneman.* *See generally* 62 A.L.R. 3d 1020.

(2) Though such contracts properly limited in scope and effect may now be valid, some of the effects of the earlier rule find expression in extant principles on the

general approach to them, their construction and the burden of proof relating to them:

 (a) "They are not favored in the law and courts are slow to grant injunctive relief." *Stoneman.*

 (b) As with other contracts, construction of them must be of the instrument as a whole in order to discern their "object and purpose," the intent of the parties. *Worrie v. Boze,* 191 Va. 916, 925 (1951).

 (c) Contracts which restrict an employee in the exercise of gainful occupation being in restraint of trade, they are "carefully examined and strictly construed" before enforcement of the restriction, *Richardson, Linville v. Servisoft of Virginia,* 211 Va. 53, 55 (1970), and *Alston Studios, Inc. v. Lloyd V. Gress & Associates,* 492 F.2d 279, 283 (4th Cir. 1974); and these same cases hold that construction must be favorable to the employee.

 (d) Under the immediately preceding rule, provisions which do not appear in the restrictive covenant will not be read into it. *Alston.*

 (e) The permissible restraint is less in covenants involving employer and employee than in those involving seller and buyer. *Richardson,* quoted in *Linville.*

 (f) The burden of proof to show that the restraint is reasonable and the contract is valid rests with the party seeking to enforce the restraint. *Richardson, Linville* and *Alston, supra; Merriman v. Cover, Drayton and Leonard,* 104 Va. 428 (1905) (an action for damages at law rather than for injunctive relief). The reasonableness must "be established by clear and satisfactory proof" in order to justify injunctive relief. *Stoneman.*

 (3) The restrictive covenant must be "incident and ancillary to the contract of employment" and such as affords only reasonable protection to the employer. *Meissel v. Finley,* 198 Va. 577 (1956), citing and quoting *Worrie.* The concept of reasonableness is related to limitations on the geographical area and the time duration, *id.,* as well as the scope of activities, *Richardson* and *Alston,* by which the employee is proscribed in his future employment pursuits. If the restriction is greater than necessary to protect the employer's legitimate interests, it is unreasonable. *Richardson.*

 (4) The nature of the employment is important and if it is of a type by which the employee acquires knowledge

of business methods and trade secrets which would be beneficial to a competitor and to the prejudice of the employer's interest this affords strong grounds for upholding the restrictive provision if it is otherwise properly limited. *Worrie*, citing and quoting *Stoneman*.

(5) "[F]air protection of a covenantee's business against detrimental competition may be demanded," *Worrie*, but fair protection is all that can be demanded, *Stoneman*, both citing *Merriman*.

(6) Enforcement in equity of restrictive covenants in contracts of employment is dependent on the facts of each case. *Foti v. Cook*, 220 Va. 800 (1980). The requirement of case-by-case determination has necessitated a somewhat full recitation of evidence above.

(7) *Meissel* sets up a three-part test for reasonableness of this type of restrictive covenant, quoting Judge Dobie in *Welcome Wagon, Inc. v. Morris*, 224 F.2d 693 (4th Cir. 1955):

> Modern courts have usually, in passing on these contracts, employed three criteria: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a living? (3) Is the restraint reasonable from the standpoint of a sound public policy?

(8) *Foti* dealt with a restrictive covenant involving a withdrawing partner rather than with a terminated employee. Nevertheless, equally applicable to employee situations regarding determination of whether restrictions are unreasonably harsh and oppressive is its statement that, "[I]t is relevant to consider the parties involved, their respective positions, and the circumstances of the transaction."

Viewing the contract in this case and particularly the non-competition covenant as well as the other evidence against the backdrop of the numerous legal principles stated, it is my opinion that equitable relief by way

of injunction enforcing the covenant, as construed below, should be granted in this instance. The reasons for this conclusion are stated in order from the standpoint of construction, the employer, the employee and public policy.

Examining the contract as a whole it scarcely needs construction to determine its general purpose and object. It establishes an employer-employee relationship between professionals for prosecution of the practice of veterinary medicine for a set period of time, extendable by mutual agreement, termination of the relationship triggering a proscription against certain competitive practice by the employee with his former employer. This last provision is clearly "incident and ancillary to the contract of employment."

Next, the restrictive provision must be "carefully examined and strictly construed" and favorably to the employee. Thus viewed the period of the restriction is plainly five years. The commencement of the five-year period is also clear. It begins when the employee left practice with the employer or November 1, 1985, when that relationship between the parties ended.

The geographical limits of the restriction are patently within a 25-mile radius. Question does arise that no specific geographical name is given to the point from which the radius emanates. Yet the restrictive covenant itself speaks of leaving practice with the employer and of the employee entering a new and competing practice, which could only mean one competitive with the employer's practice. Otherwise the 25-mile radius could have no meaning. As the parties saw fit to include a geographical limitation, under rules of construction they must have intended it to have some meaning. The only meaningful interpretation even under strict construction is that the radius emanates from the point of the old practice. This point was properly established by parol to be Clearbrook, Frederick County. This is not to read into the restrictive covenant a term which does not appear in it as forbidden by *Alston*. In that case the covenant was held unenforceable because *inter alia* no geographical limits were set, and so no geographical bounds or point of reference could be imported into the agreement. *See also Davis-Robertson Agency v. Duke*, 119 F. Supp. 931 (E.D. Va. 1953).

The third restrictive element to be considered after time and area is the extent to which the activity itself is restrained. It is clear that the restrictive covenant speaks of the practice of veterinary medicine. It is clear that first the parties speak of their practice together as employer and employee and, second, speak of practice in the same field of endeavor by the employee after that relationship has ended. In the latter regard the activity is termed "any new competing practice situation." "New" differentiates from the old practice activity. "Competing" means activity in competition with the old.

"Any. . . practice situation" has a broad sweep. In Virginia one may practice a profession such as this as a sole proprietor, as a partner in a firm, as a member of a professional association or of a professional corporation, as an associate or professional employee of a sole proprietor, partnership or professional association or corporation, or as an independent contractor of any of the latter entities. While this broad general language is lacking in the detail and specificity which a more legally sophisticated hand may have written, the phrase is of sufficient reach to cover all of those modalities of carrying on the business of veterinary medicine. The defendant has been working as an independent contractor for a veterinary practice located within the forbidden territory. Not only is the proscribing language of the covenant sufficiently clear and inclusive to cover that modality, but in addition to hold otherwise would, in the words of *Foti*, allow the defendant "to circumvent the covenant and accomplish indirectly what he could not accomplish directly."

Attendant to the principle that less restraint in employer-employee covenants is permissible than in seller-buyer covenants and that of close scrutiny and strict construction favorable to the employee, further interpretation is necessary. Giving meaning to the phrase "enter into" becomes vital especially with reference to the immediately following phrase, "any new competing practice situation." The covenant does not say "You shall not within the proscribed area examine, treat, test, give opinion on or otherwise act with respect to animals" in a way a doctor of veterinary medicine in practice would ordinarily do; it says "that you not enter into" practice within

a defined geographical area. When one "enters into" the practice of a profession or other business, in common understanding that practice must have a situs, a locus which is the physical point from which the practice is carried on. Entry into the practice is at that point, even though the clientele of it may extend over a wide geographical area.[1]

It is difficult to conceive of entering into a practice except at a certain place. "Any new competing practice situation" defines the scope of vocational activities which are restricted. This, however, is modified and limited by the geographical consideration: that the new practice situation--in whatever modality--not be entered into within the 25-mile radius; that the employee not locate a situs for any form of veterinary practice or be associated with anyone who has a practice situs within the circle. Strict construction favorably to the defendant of the words used in the covenant do not restrain him further than this.

In *Stoneman* the covenantor, who was an officer, employee and stockholder in a hardware business, on selling his stock agreed "not to go into the hardware business" for a specified period within a geographical area. Within that time and area he became employed as a clerk in a hardware store. Under the particular facts of that case the covenantor was held not to have violated the covenant. Working merely as a clerk for a competitor of the covenantee did not constitute going into business, which implies necessary exercise of executive, managerial and like functions. The covenant not to go into the hardware business did not prevent the covenantor from becoming a clerk in a hardware business in the proscribed area in that case. So here by strict construction favorable to the covenantor, the covenant not to enter into a new practice situation inside the proscribed area would not prevent the covenantor

---

[1] I am not unconscious of the increasingly prevalent modern trend of "branch office" practice in law, medicine and accountancy. This does not destroy the concept of a practice having a physical locus but perhaps merely modifies it to the extent that a practice may have several loci. A glance at the letterheads of those in this type of practice is sufficient to make the point.

from entering a new practice situation, even a competitive one, outside that area.

Under that construction the restraint is now examined as to its reasonableness, first from the standpoint of the employer. The complainant employer had a legitimate interest to protect, namely, his practice in a profession in which he was trained and experienced and had a financial investment and which afforded him his means of livelihood. The employer at the time of the contract had only recently ventured into this new practice. Further, as a new practice it would be more fragile and more subject to injury from competitive forces. His employee, a fellow professional, would have gained in the course of his employment knowledge of the employer's business methods, professional skills he may have possessed and especially entree to and knowledge of the employer's clientele, all of which might be used by the former to the detriment of the latter.

In light of his interest it would not be unreasonable for the employer to reduce or possibly eliminate competition from his former employee by restraining the latter from setting up by any modality a new practice within an appropriately defined area for an appropriately limited time span. The complainant's evidence shows that his practice is not carried on within the limits of a perfect circle with a radius of 25 miles from Clearbrook, and it would be passing strange if that were the case. The geographical extent of his practice is geometrically somewhat lopsided, extending at its least about 12 miles in one direction and at its most 35 or more miles in another direction. The actual area of the complainant's practice and the area proscribed by the covenant need not be with perfect nicety co-extensive. Furthermore, considering the topography and means of communication within the 25-mile radius the complainant's new practice might well expand beyond the present shortest range. Under the circumstances the extent of the geographical limitation does not seem unreasonable.

Neither does the restriction of five years time seem unreasonable. In this case it may be approaching the ultimate chronological limit. In *Worrie, Alston, Linville* and *Foti* the time limit was two years. In *Richardson* it was three years and in *Stoneman* and *Meissel* it was five years. Some of those cases upheld the restrictive covenant,

including *Meissel* with its five-year time restriction. In those which struck down the covenant the time restriction was not the basis for doing so. In *Davis-Robertson Agency* a five-year limitation was struck down. Strong inference can be drawn from the opinion that it was the five-year time limitation in combination with a lack of geographical limitation which led to that result.

*Meissel's* five-year restriction was applied to the former limited partner of an insurance agency at which he had access to the names and policies of customers, including important information as to the renewal dates of the policies. Generally policies came up for renewal on either a three- or a five-year schedule. This formed an important basis for the reasonableness of the time length of the restriction. The complainant here gave unrebutted testimony from his lengthy experience in practice that many clients for one reason or another are lost to it by the end of five years. This lends support to the reasonableness of a restriction of that length.

The testimony of the witness Truban, a practitioner of long experience, also tends to support the reasonableness of the five-year and 25-mile limitations. He stated that these provisions were common practice, virtually a trade custom. *Compare Foti* at page 807. In that case the effect of trade custom and practice as they bear on the reasonableness of restrictions in non-competition covenants was considered relevant. Though in another field, by analogy the case of *The T. J. Hooper*, 60 F.2d 737 (2d Cir. 1932), is apropos. There tugboat owners were held liable for losses because of their negligence in failure to have radio capability to receive warning of impending storm when such capability was available though not then generally used in the trade. The case holds that even though a universal trade practice may exist the practice is never conclusive on the question of negligence.[2] By parity of reasoning common practice in a profession in the use of restrictive covenants on employees is not conclusive as

---

[2] Consistent with this, also from negligence law, is the statement in Limberg v. Lent, 206 Va. 425, 430 (1965): "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

to their reasonableness. Nevertheless such evidence is entitled to weight when consistent with other factors tending to demonstrate reasonableness.

On the whole then, from the employer's standpoint the restrictions were reasonable. He had a "legitimate business interest" to protect and the protective restraint was "no greater than necessary" for that purpose. *Meissel.*

Next the contract is examined from the employee's standpoint. Reasonableness from his perspective and reasonableness from that of the employer involve related factors and so are necessarily to some extent intertwined. This does not mean, however, that reasonableness to the employee is but a mirror reflection of reasonableness to the employer. Though the restraint must pass muster vis-a-vis the employer, doing so is not axiomatic the same result follows for the employee. An independent appraisal of the restrictive feature must be made from his standpoint. The restraint is unreasonable if it is "unduly harsh and oppressive in curtailing his legitimate efforts to earn a living." *Id.*

The factors relevant to harshness and oppressiveness mentioned in *Foti, viz,* the parties, their positions and the circumstances, have been discussed generally above. Bearing those in mind, any restraint on one's lawful activities in earning a livelihood inherently contains a degree of actual or potential harshness and oppressiveness. Yet it is only undue harshness and oppressiveness which result in unreasonableness in and invalidity of the covenant. Examined from the position of the employee, this covenant against competition by him contains important identifiable ameliorating consequences which will be discussed *seriatim.*

First, the proscription against the scope of the employee's activities themselves has definite limitations. Only entry into a "practice situation" is forbidden. While in most if not all professions active practice of it as that term is generally understood is the most frequent and broadest field of activity in which such professionals engage, there are other areas than practice which they may pursue. Some of the narrower activities within the profession which are left untouched by this covenant are teaching and clinical work in educational institutions, veterinary research in those institutions or for private foundations or for animal food and drug manufacturers or with governmental agencies, employment as staff veterina-

rian at zoos or other similar installations, and employment by governmental agencies in agricultural extension work, in research and laboratories and in the inspection of animals or meat products. While each of these fields and likely all of them combined are rather narrower than that of common practice of veterinary medicine, this array of residual professional activities left open to the employee is not inconsiderable in scope. Of significance in this case is the fact that judging by his curriculum vitae the employee appears to have devoted most of his professional career to one or more of those pursuits.

As to time, five years is a significant period in a professional career. Under most circumstances an absolute ban on pursuing any and all activities of a profession even for five years would likely be an unduly harsh and oppressive restriction against earning a living. Yet here the effect of the five-year restriction is not so when considered in connection with the amelioration as to scope of activities mentioned above and the limitation on geographical area discussed below.

The area covered by the 25-mile radius amounts to nearly 1,964 square miles, which falls largely in Virginia, partly in West Virginia and to a lesser extent in Maryland. Thus expressed this appears to be a considerable territory. On the other hand, it is but a small fraction, for example, in comparison with the 42,000 square miles encompassed by the bounds of the Commonwealth. The area in absolute terms when considered in conjunction with the efficiency of modern transportation and communication amounts to a relatively constricted territory for the practice of veterinary medicine. Added to this is the result of the strict construction given to the covenant whereby the employee is excluded merely from setting up the locus of a practice situation within the defined area. Besides these considerations is the previous peripatetic nature of the covenantor's pursuit of veterinary medicine, extending to three continents and to licensing in three States of the Union. No undue restriction against him territorially is found.

Based on the foregoing analysis of the covenant from the standpoint of the employee in the contexts of activity scope, time and geographic limitations where is no undue harshness or oppression.

The third and final *Meissel* criteria is the reasonableness of the restraint from the standpoint of sound public policy. The first public interest now considered is that of the individual employee himself as a member of the public. At earlier common law restrictive covenants on one's employment were invalid as restraints on one's ability to earn a living, which could lead to the undesirable result that the person might become a public charge. Thus, though for different reasons, the public interest and that of the individual are coincident. Becoming unemployed and a public charge is still a consideration but perhaps of reduced importance today because of the tremendous increase in modern productivity resulting in the availability of far greater public resources to support needy citizens. Not so economic in foundation is the public policy, very broadly stated and which also intersects the individual's interests, that a person should be entitled to follow whatever lawful vocation he may desire and be fitted for wherever he may wish. This entitlement is not without its restrictions and in the present case is counterbalanced by the public's interest in allowing "fair protection" of another's business against "detrimental competition." Considering the limitations imposed by this covenant on the defendant's rights to follow his vocation in competition with the complainant, no transgression of public policy in this respect is found.

Two other public interest features need only be touched upon. First, public policy is, with a few closely regulated exceptions, opposed to monopoly. In view of the number of veterinarians in practice in the area and its population, the evidence in the case carries not even a hint of monopoly. Second, animal husbandry being so important to the basic industry of agriculture and the health and well-being of their pets being so important to the many citizens who possess them, in both instances the availability of veterinary services or the loss of them is of public concern. Such of those services as may be lost by virtue of the defendant being prohibited from selecting a locus for his practice within the 25-mile radius is at most minimal. Even the loss of a theriogenologist would seem to have no major impact. Other veterinarians in the area, while not specialists in this field, do engage in it. Furthermore, there is no evidence that these special-

ists are not available to be called in just as the defendant was, leading to his commencing practice locally. For the foregoing the restraint imposed by the covenant is not unreasonable in relation to "a sound public policy."

In sum, on the facts of this case and on careful examination and strict construction of the restrictive covenant, the employer has borne the burden of proof to show the restraints imposed by the covenant meet the *Meissel* criteria of reasonableness and the validity of the contract. Overall, "It is as much a matter of public concern to see that valid engagements are observed as it is to frustrate oppressive ones." *Meissel* at page 584, quoting *Sonotone Corporation v. Baldwin*, 42 S.E.2d 352 (N.C. 1947). Finally, if the agreement the defendant entered into now appears ill advised from his standpoint, still it remains a basic tenet of law that, "Courts cannot relieve one of the consequences of a contract merely because it was unwise." *Owens v. Owens*, 196 Va. 966, 974 (1955). No opinion is expressed herein as to the results in this case had this covenant against competition been otherwise construed.

Decree granting injunction to the extent provided above will enter superseding the temporary injunction now in effect.