# Richmond

ROBERT W. LINVILLE v. SERVISOFT OF VIRGINIA, INCORPORATED.

June 15, 1970.

Record No. 7366.

Present, All the Justices.

*Jack D. Maness*, for appellant.

*Frederick H. Creekmore*, for appellee.

GORDON, J., delivered the opinion of the court.

The issue before us is whether the trial court was correct in enjoining Robert W. Linville from competing with his former employer, Servisoft of Virginia, Incorporated.

Servisoft, a company engaged in the water-softening business, employed Linville as a salesman in April 1968. Before beginning work, Linville entered into an agreement with Servisoft containing the following provisions:

"In consideration for being employed by Servisoft of Virginia, Incorporated, and upon receiving the Servisoft of Virginia, Incorporated, Soft Water Sales program, it is understood and agreed that upon the termination of the agreement, employee [Linville] agrees and covenants that he will not seek or accept employment

with any other competitive business of any nature whatsoever within franchised areas which include cities of Chesapeake, Virginia, Virginia Beach, Virginia, Portsmouth, Virginia and Norfolk, Virginia two years subsequent to the termination of this agreement.

"During the existence of this agreement, employee agrees and covenants that he, the employee himself, will devote his full effort and time to his employment and will not engage in any competitive business of any nature whatsoever for the same areas and for the same time as aforesaid."

Linville terminated his employment with Servisoft on March 17, 1969. Shortly thereafter he obtained a franchise from Water Care Corporation of Tidewater, a supplier of water-softening equipment, bought equipment from Water Care and prepared to engage in the water-softening business in Chesapeake, Virginia. Servisoft brought this suit on May 12, 1969, seeking an injunction against Linville.

On the same day the trial court issued a temporary injunction, without notice to Linville, enjoining Linville

"from employment with . . . Water Care Corporation of Tidewater or any corporation or individual engaged in water conditioning sales and services until further order of this Court".

After hearing evidence, which revealed that Linville proposed to operate as a sole proprietor, the court entered a final decree enjoining Linville

"from engaging in or operating any business competitive with Servisoft of Virginia, Incorporated and from seeking or accepting employment with any business in any manner whatsoever competitive to Servisoft of Virginia, Incorporated in the cities of Chesapeake, Virginia Beach, Portsmouth and Norfolk, Virginia, through March 17, 1971."

Linville's counsel urges reversal of the final decree for several reasons. We need only discuss whether the trial court incorrectly construed the employment agreement as imposing a postemployment restraint against Linville's managing and operating a competitive business as a sole proprietor.

"In cases of this type the employer has the burden of proving that

the restraint is reasonable and the contract is valid. Since the restraint sought to be imposed restricts the employee in the exercise of a gainful occupation, it is a restraint in trade, and it is carefully examined and strictly construed before the covenant will be enforced. Moreover, the scope of permissible restraint is more limited between employer and employee than betwen seller and buyer, and the covenant is construed favorably to the employee." [1] *Richardson v. Paxton Co.*, 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962).

The language of Linville's employment agreement dealing with Linville's postemployment activities forbade only his seeking or accepting *employment* with a competitive business. In contrast, the language dealing with Linville's activities while employed by Servisoft forbade his *engaging* in any competitive business.

Servisoft may have inadvertently imposed a narrower restraint against Linville's postemployment activities than against Linville's outside activities while employed by Servisoft. On the other hand, Servisoft may have intentionally imposed a narrower restraint on postemployment activities. When the agreement was drafted, perhaps Servisoft did not fear competition from a business managed and operated by a person, such as Linville, who had left the company's employ.

Whatever Servisoft's subjective intent, we must give effect to the language of the agreement, strictly construed. We therefore construe the agreement as imposing a postemployment restraint only on Linville's employment by a competitor of Servisoft. Accordingly, the trial court erred in enjoining Linville from engaging in business as a sole proprietor.

Counsel for Servisoft relies upon *Stoneman* v. *Wilson*, 169 Va. 239, 192 S.E. 816 (1937), involving an agreement for the sale of stock of J. C. Matthews Co., a company engaged in the hardware business. Under that agreement, the seller Stoneman agreed "not to go in the Hardware business for a period of 5 yrs. in Galax, Va. or a radius of five miles". Stoneman had been employed by Matthews Co. for many years, having acted as its secretary and treasurer and purchasing agent, but was discharged shortly before the agreement was made. Shortly thereafter, Stoneman accepted employment as a clerk in another hardware company in Galax, and the buyer under

---

[1] For a discussion of the different purposes underlying postemployment restraints and restraints incident to sales, *see H.M. Blake, Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 646-47 (1960).

the agreement brought suit to enjoin him from continuing in that employment.

Confronted in *Stoneman* with the ambiguous covenant "not to go in the Hardware business", this Court construed the covenant as restraining Stoneman from going into the hardware business only if he engaged in business in a managerial capacity like his capacity with Matthews. The Court therefore dissolved the injunction issued by the trial court enjoining Stoneman from continuing his employment as a clerk in a competitive business.

*Stoneman* and this case differ factually. The decisions are consistent in construing agreements in restraint of trade strictly.

Our order will reverse the decree appealed from and dissolve the injunction.

*Reversed and final decree.*