## CLINCH VALLEY PHYSICIANS, INC.

### v.

## LUIS A. GARCIA, M.D.

Record No. 910811

February 28, 1992

Present: Carrico, C.J., Stephenson, Whiting, Lacy, Hassell, and Keenan, JJ.,
and Poff, Senior Justice

*W. Fain Rutherford (Kevin S. Blair; Joe M. Bowen; Woods, Rogers & Hazlegrove; Bowen & Bowen,* on briefs), for appellant.
*Thomas W. McCandlish (Beverly W. Snukals; Mark B. Rhoads; Mezzullo & McCandlish,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we decide whether a noncompetition provision in a year-to-year employment contract applies upon its nonrenewal, as well as upon its termination for cause.

Clinch Valley Physicians, Inc. (CVP) is a professional corporation whose shareholders are physicians who practice in the Richlands area and are employed by CVP. Each physician was employed pursuant to a uniform contract drafted by CVP. In the latter part of 1984, CVP and its physician-employees, including Dr. Luis A. Garcia, agreed to CVP's amendment of the contract.

The following provisions of various articles of this amended contract are relevant to the issue:

> Article 1. The term of the employment contract shall be for one (1) year, . . . and continuing thereafter from year to year unless terminated. Said contract shall automatically be renewed for an additional year unless either of the parties gives the other party written notice of intention not to renew the same at least thirty (30) days prior to the expiration of any term.
>
> Article 3. . . . This contract of employment shall be subject to the rules adopted by the Board of Directors and Physician hereby agrees to observe all such rules, including but not limited to, any retirement provisions or any other provisions adopted by the Board. Corporation, by votes of its Board of Directors may terminate this contract for justifiable cause, which shall include but shall not be limited to any of the following: (a) the withdrawal or suspension of his license to practice medicine and/or surgery in Virginia; (b) the withdrawal or suspension of his license to dispense or pre-

scribe narcotic drugs; (c) his being guilty of professional misconduct by any professional organization having jurisdiction; (d) the withholding by him of any professional or other fees in breach of the terms and provisions of this agreement; (e) failure to observe the general rules promulgated by the Corporation through its Board of Directors. In the event Physician's contract shall be terminated, Corporation shall state the reason for termination and notice of termination shall be . . . delivered in person or mailed to Physician's last known residence. Upon the mailing or the delivery in person of such notice, the recipient's duties as a practicing Physician with Corporation shall cease immediately and contract shall be terminated on the date fixed on the notice.

Article 4. Physician shall have right to a hearing, if requested within ten (10) days of termination, before the Committee on Medical Practice, the Committee shall recommend final action to the Board of Directors. Any decision of the Board of Directors of the Corporation may be reversed by the action of more than 50 per cent of the stockholder physicians, actively practicing with the Corporation.

Article 16. Practice after Termination: Upon termination of this agreement, for any reasons whatsoever, the Physician shall not, for a period of three (3) years thereafter, engage in the practice of medicine or surgery in a radius of twenty-five (25) miles of Richlands.

The contracts were renewed annually until 1990. At that time, CVP, exercising its rights under Article 1 of the contract, notified its physician-employees that it would not renew their employment contracts, but offered continued employment under new contracts. Dr. Garcia was dissatisfied with CVP's offer and allowed his contract to lapse.

Desiring to practice medicine in the Richlands area, Dr. Garcia filed a bill of complaint for declaratory judgment to determine whether the noncompetition provision in Article 16 applied to him. After CVP filed its answer, Dr. Garcia filed a motion for summary judgment.

Dr. Garcia contended, and the trial court agreed, that the noncompetition provision applied only upon an employee's termination for cause. On the other hand, CVP contended that the Article 16 prohibition of employee competition upon termination of this

agreement "for any reason whatsoever" applied to nonrenewals of the contract, as well as to CVP's terminations for cause. CVP appeals the trial court's grant of Dr. Garcia's motion for summary judgment and dismissal of the suit.

■ First, we consider the principles that govern us in deciding the applicability of noncompetition provisions in an employment contract.

> Since the restraint sought to be imposed restricts the employee in the exercise of a gainful occupation, it is a restraint in trade, and it is carefully examined and strictly construed before the covenant will be enforced.

*Linville* v. *Servisoft of Va., Inc.*, 211 Va. 53, 55, 174 S.E.2d 785, 786-87 (1970). In *Linville*, the issue turned on the *scope*, not the ambiguity, of the noncompetition provision.

■ But if a noncompetition provision in an employment contract "is unambiguous and capable of only one reasonable construction, we read it according to its plain meaning." *Paramount Termite Control Co.* v. *Rector*, 238 Va. 171, 174, 380 S.E.2d 922, 925 (1989). However, each contractual provision must be considered in the context of all other contractual provisions. *See Clyborne* v. *McNeil*, 201 Va. 765, 770, 113 S.E.2d 672, 676 (1960); *Worrie* v. *Boze*, 191 Va. 916, 924-25, 62 S.E.2d 876, 880 (1951). Accordingly, if one such provision, considered in the context of the other language used in the contract, is capable of more than one reasonable construction, it is ambiguous, and we will adopt that construction most favorable to the employee. *Iowa Fuel & Minerals, Inc.* v. *Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). *Cf. Paramount Termite Control Co.*, 238 Va. at 174, 380 S.E.2d at 925.

Next, we examine the contract in the light of these principles. CVP seeks to extend the *scope* of its noncompetition provision to the nonrenewals of the employment contract. Consistent with *Linville*, we carefully examine and strictly construe the language of Article 16 in determining whether its scope encompasses CVP's nonrenewal of Dr. Garcia's contract. 211 Va. at 55, 174 S.E.2d at 787.

Article 3 lists some of the various reasons for termination, but expressly provides that CVP's termination of "this contract for justifiable cause . . . *shall not be limited to any of the [listed*

*causes]*." (Emphasis added.) Article 16 makes the noncompetition provision applicable "[u]pon termination of this agreement, *for any reasons whatsoever.*" (Emphasis added.) This modifying clause can be construed reasonably to refer only to CVP's broad reservation of a right to terminate for *any* justifiable cause or reason even though not listed in the contract.

■ Considering Article 16 in context with Articles 1, 3, and 4, we conclude that it can be read reasonably to apply only to those instances in which CVP has terminated an employee for cause. Even if this may not have been what CVP intended when it drafted this provision, we are limited to the language of the contract, strictly construed. *Linville*, 211 Va. at 55, 174 S.E.2d at 786-87. If CVP, the scrivener of the contract, had intended to make the restrictive covenant applicable upon nonrenewal, it should have said so in explicit terms.

■ Because we conclude that the noncompetition provision is inapplicable to CVP's nonrenewal of the contract, we will affirm the judgment of the trial court.

*Affirmed.*