Present:  All the Justices

PERSINGER & COMPANY

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.

v. Record No.  952160                November 1, 1996

MICHAEL D. LARROWE

FROM THE CIRCUIT COURT OF ALLEGHENY COUNTY
Duncan M. Byrd, Jr., Judge

In this appeal we consider whether an individual can be bound by a non-competition clause of a partnership agreement to which he was not a signatory, although he accepted a partnership interest and served as a partner for several months.[1]  Under the facts of this case, we hold that the partnership agreement did not bind the former partner who did not sign it.

The pertinent facts are not in dispute.  From 1980 to 1987, Michael D. Larrowe (Larrowe) was a staff accountant with the general accounting firm of Persinger & Company (the Persinger firm).  In 1985, Larrowe was promoted to a non-equity position of "office partner" and signed a non-competition agreement as a condition of this promotion.  Larrowe left the firm in 1987 on good terms and joined an accounting practice in North Carolina.

In September 1990, Larrowe returned to Virginia and entered into negotiations to resume employment with the Persinger firm. Larrowe wished to be made a general or full partner with equity in the firm.  The parties agree that when Larrowe resumed

_____

[1]This appeal was brought by the partnership in order to contest two interpretations of terms in the agreement made by the trial court in rendering judgment for the partnership which limited the amount of the recovery.  Our resolution of the dispositive issue, which was raised as cross-error by the former partner, renders these issues moot.

employment with the firm as an office partner in December 1990, there was a mutual expectation that an equity partnership offer ultimately would be extended to him.  In November 1991, the Persinger firm requested that Larrowe re-execute the non-competition agreement as an office partner.  Larrowe refused, and the request was not pursued.

During the summer of 1992, Larrowe and the firm entered into negotiations regarding his promotion to equity partner.  During the course of these negotiations, Larrowe was provided with a copy of the Persinger firm's July 1, 1989 partnership agreement which included a non-competition provision:

24.1 Limitations Imposed on Former Partner.

When a party to this Agreement ceases to be a partner, whether by reason of withdrawal or retirement, he will observe the following limitations.  For a period of three (3) years immediately following the date he ceased to be a partner, or while he is receiving guaranteed payments from the partnership, he shall not directly or indirectly render public accounting services to any clients who were serviced by the partnership at date of his withdrawal or retirement.  A partner violating this paragraph shall pay to the partnership an amount equal to one-third (1/3) of each year's fee as collected for a period of three (3) years.  Such amount is due within thirty (30) days after it has been collected from the client by the former partner.

In addition, the agreement contains the following provision:

26.3 Changes in General Partners.

The obligations and rights accruing to this partnership by virtue of this Agreement shall continue unabated regardless of any change in the membership of this general partnership; such obligations and rights shall be automatically assigned to the partners constituting the general partnership created by this Agreement as of any particular date; and, such assignments shall be effective without any further affirmative action on the part of the parties hereto.

On September 1, 1992, Larrowe wrote a letter accepting "the Firm's offer of a general partnership interest."  The nature of the Persinger firm's offer is not disclosed in the record, but it is undisputed that Larrowe did not sign the 1989 partnership agreement or any similar document at this or any subsequent time.

Shortly after Larrowe became a general partner, two senior members of the Persinger firm began to make preparations for their retirement.  During this period, the remaining partners, including Larrowe, discussed drawing a new partnership agreement to be signed after the retirements became effective.  The partners were also considering reconstituting the firm as a professional limited liability corporation.

Larrowe served as a general partner until January 26, 1993, when he submitted his resignation.  Larrowe subsequently began his own accounting practice in Galax.  He solicited a number of the Persinger firm's clients, obtaining employment from some.

On August 9, 1993, the Persinger firm filed a petition for declaratory judgment and bill of complaint against Larrowe seeking to enforce the non-competition provision of the 1989 partnership agreement and to recover fees it alleged were owed the firm under the provisions of the agreement.  Larrowe filed grounds of defense asserting that he was not subject to the partnership agreement and its non-competition provision.  Following an _ore_ _tenus_ hearing, the trial court entered judgment for the Persinger firm.  This appeal followed.

There can be no doubt that upon Larrowe's acceptance of the Persinger firm's offer of a general partnership interest, a

partnership was created between the Persinger firm and Larrowe. The threshold issue of this appeal is whether by virtue of that partnership Larrowe could be bound by the 1989 partnership agreement and its non-competition provision without being a signatory thereto. In resolving this issue we are guided by the well settled principles that the Persinger firm had the burden of proof and that because non-competition agreements are a restraint of trade, they will be carefully examined and strictly construed before they will be enforced. See Clinch Valley Physicians, Inc. v. Garcia, 243 Va. 286, 289, 414 S.E.2d 599, 601 (1992).

The Persinger firm asserts on brief that the only plausible interpretation of the facts in this case is to assume that its "offer of general partnership in the firm was an offer for Larrowe to become a party to the [1989] Agreement." In support of this position, the firm contends that article 26.3 of the 1989 partnership agreement "automatically subjects new partners to the same rights and obligations [of the 1989 partnership agreement] as other partners . . . requir[ing] no affirmative conduct for these effects to occur." We disagree.

The 1989 partnership agreement evinces the intent of its signatories to conduct business as a partnership and to be bound by the included non-competition provision. It is true that in the course of the Persinger firm's negotiations with Larrowe, he was shown this document. Thereafter, when an equity partnership offer was extended to Larrowe and that offer was accepted by him, no reference was made to this document. Nothing in the record supports the conclusion that this offer expressly or implicitly

required Larrowe to become a party to the 1989 agreement.  To the contrary, the Persinger firm concedes that Larrowe was never asked to sign the agreement, and the record is unequivocal that he did not do so.[2]

Nor could Larrowe be bound to the agreement under the provisions of article 26.3.  For the Court to find that the article has the effect proposed by the firm, we would be required to accept the circular reasoning that Larrowe was bound by the agreement by virtue of the agreement's requirement that partners be bound by it.  A more sensible construction of article 26.3 would be that those partners who were signatories to the agreement would remain bound by the agreement at the time of a dissolution or other change in the composition of the general partnership.

The Persinger firm's threshold burden in this case was to establish that Larrowe was a party to the 1989 agreement and its non-competition clause.  Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract. Progressive Construction Co. v. Thumm, 209 Va. 24, 30, 161 S.E.2d 687, 691 (1968).  The record before us fails to show that Larrowe gave his assent to the 1989 agreement or to any express agreement other than to serve as a general partner.

[2]Moreover, Larrowe apparently was not shown or asked to sign a 1991 general partnership agreement which was also produced at trial, although not made an exhibit.  According to the testimony of one of the partners, the 1991 agreement was substantially similar to the 1989 agreement, but was signed by a different group of individuals.

A partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit."  Code § 50-6(1).  The statutory language implies the voluntary joining together of two or more persons with the intent to form a partnership.  No written document is necessary to create the partnership.

Furthermore, it is permissible for existing partnerships to associate with individuals, corporations, and other partnerships for the purpose of forming new partnerships.  See Code §§ 50-2, 50-6.  Thus, when Larrowe accepted the Persinger firm's offer, a partnership was formed between Larrowe and the partnership that then constituted the Persinger firm.  Whatever the nature of this new partnership, with regard to Larrowe's rights and obligations, it was decidedly not created by nor subject to the provisions of the 1989 partnership agreement.

Stated another way, when Larrowe accepted the Persinger firm's offer, he became an equity partner not subject to the 1989 partnership agreement.  Absent some written agreement affirmatively adopted by Larrowe providing otherwise, the partnership between Larrowe and the Persinger firm was governed exclusively by the Uniform Partnership Act.  Code §§ 50-1 through -78.  Accordingly, the Persinger firm's claims against Larrowe, founded solely on the operation of the 1989 partnership agreement, lack merit because Larrowe was not a party to that agreement.

For these reasons, we will reverse the judgment of the trial court and enter final judgment for Larrowe.

Reversed and final judgment.