## CIRCUIT COURT OF THE CITY OF SALEM

Drs. Blum, Newman,
Blackstock & Assocs.,
Optometrists, P.C.

v.

Timothy G. Jessee

April 17, 1997

Case No. CH97-19

BY JUDGE ROBERT P. DOHERTY, JR.

Defendant optometrist resigned his employment of nine years with Plaintiff's professional corporation and began practicing at a local Wal-Mart store. Plaintiff asks for injunctive relief and damages, claiming Defendant is in violation of his employment/non-competition agreement. The agreement restricts Defendant from practicing optometry within a 25-mile radius of the Plaintiff's nine offices for three years. Defendant argues that the contract is overbroad, ambiguous, punitive, and unenforceable. On the facts of this case, the Court finds that it is not overbroad nor unenforceable as a whole, but that portions of it are punitive and unenforceable and portions are ambiguous.

I. The non-competition agreement, if enforced as argued, would prevent the Defendant from being employed as an optometrist in the Roanoke Valley for a period of three years. Contracts that prevent a person from earning a living are looked upon with disfavor. "Since the restraint sought to be imposed restricts the employee in the exercise of a gainful occupation, it is a restraint in trade, and (as such) it is carefully examined and strictly construed before the

covenant will be enforced." *Clinch Valley Physicians, Inc. v. Garcia*, 243 Va. 286 (1992).

Upon examination of the contract, if language is found that "is capable of more than one reasonable construction, it is ambiguous, and we will adopt that construction most favorable to the employee." *Clinch Valley, supra*, at 289. In this case, the Defendant employee points to language in paragraph 15 which can reasonably be construed, in the conjunctive, to require him to practice optometry *and* to sell eyeglasses before a violation of the contract occurs. The Defendant claims that he does not sell eyeglasses in his current position. Assuming that to be true, then the Defendant has not violated the non-competition terms of the contract document.

II. Both the Plaintiff and the Defendant make reference to the line of cases that include *Roto-Die Co. v. Lesser*, 899 F. Supp. 1515 (W.D. Va. 1995), and *Richardson v. Paxton*, 203 Va. 790 (1962), for the proposition that:

> Modern courts have usually, in passing on these contracts, employed three criteria: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy? *Richardson, supra* at 794.

Each party, however, applies their own interpretation to the facts to determine if the trade restraints are reasonable. The Court's view of the unique facts of this case is that the contract as a whole is not unreasonably restrictive.

The employer has a legitimate business interest to protect. The parties entered into a contract to prevent the Defendant from taking unfair business advantage of his employer by virtue of the business knowledge taught to him by his employer. Plaintiff should be able to rely on this agreement to stop the Defendant from using confidential information gained during his employment, within the time and areas prohibited. These business methods and secrets include, but are not limited to, patient and customer lists, retail sales programs, and management techniques.

The restraint of trade called for by the agreement, as interpreted by this Court, is not unduly harsh or oppressive in curtailing the Defendant's legitimate efforts to earn a livelihood. When the Defendant applied to the Plaintiff for employment, he brought with him his ability to earn a living with

his special training and licensing as an optometrist. He still has that. The agreement takes nothing away from him. Instead, he is simply prohibited from using merchandising and business secrets knowledge gained from his employer in a way that would harm his employer for a limited period of time and location.

Under this interpretation of the contract and of the parties' intent, there is no violation of public policy. The Plaintiff is protected in its merchandising and business secrets. The Defendant, while he may not utilize the learning and methods he gained from his employment by the Plaintiff, may make a living and provide for himself and his family using skills he had prior to this employment. The public's access to trained optometrists has not diminished, and trade has not been unreasonably restrained.

III. A final area to explore is the Defendant's allegation that the liquidated damages portion of the contract is unenforceable as it constitutes a penalty. *301 Dahlgren Limited Partnership v. Board of Supervisors*, 240 Va. 200 (1990), is definitive on this point.

> [W]hen the damages resulting from the breach are susceptible of definite measurement or when the agreed amount would be grossly in excess of actual damages, courts usually construe such an agreement to be an unenforceable penalty.

In this case, were it necessary to fix damages, actual damages could be reasonably ascertained by use of normal accounting practices. For the reasons set forth in *Dahlgren, supra*, the Court finds that the liquidated damages portion of the contract is an unenforceable penalty clause. It is, however, severable.