# CIRCUIT COURT OF ROANOKE COUNTY

Carilion Healthcare Corp.

v.

William F. Ball

Case No. CH00-732

William F. Ball

v.

Carilion Healthcare Corp.

Case No. CH01-78

February 23, 2001

BY JUDGE DIANE MCQ. STRICKLAND

The issue before the court is whether the Noncompetition Agreement entered into by the parties is enforceable upon expiration of the term of employment when a reasonable offer to continue employment has been made.

Carilion Healthcare Corporation ("CHC") and Dr. William F. Ball entered into a Physician Employment Agreement ("PEA") and a Noncompetition Agreement (collectively "the documents") effective July 30, 1996. The PEA set forth the details of the employment relationship while the Noncompetition Agreement addressed the purchase of the assets of Ball's medical practice and the terms of the covenant not to compete. Ball remained employed with CHC until the PEA expired on September 30, 2000, during which period CHC made all of the contractual payments for purchase of Ball's practice. CHC made an offer of continued employment to Ball, the reasonableness of which is not contested. Ball declined the offer and began practicing medicine independently of CHC.

On December 7, 2000, CHC filed a Bill of Complaint seeking injunctive relief and damages for breach of the Noncompetition Agreement in the Circuit Court of Roanoke County. Ball filed a Bill of Complaint for Declaratory and Injunctive Relief in the Circuit Court of the City of Roanoke on December 8, 2000. Subsequently, these cases were ordered consolidated in the Circuit Court of the County of Roanoke. The parties are now before this court on CHC's motion for partial summary judgment and the cross-motion of Ball for summary judgment.

The parties agree that the Noncompetition Agreement was incorporated into the PEA and that the documents must be read together to determine the issue before the court. CHC contends that the Noncompetition Agreement became effective once Ball's employment ended, whether by expiration or termination. Ball argues that the covenant is triggered only by termination of employment which does not include expiration of the term and, therefore, he is not in violation. The issue is a close one, and the arguments advanced by both parties are compelling. However, for the reasons that follow, the court grants partial summary judgment to CHC and denies Ball's cross-motion for summary judgment.

The Noncompetition Agreement provides in paragraph 2 that Ball shall not compete with CHC for the provision of primary care medical services within 25 miles of the primary office "for a two (2) year period following any *termination* of employment. . . ." The Virginia Supreme Court has ruled that restraints in trade must be "carefully examined and strictly construed before the covenant will be enforced" and any ambiguity must be construed in favor of the employee. *Clinch Valley Physicians, Inc. v. Garcia*, 243 Va. 286, 289, 414 S.E.2d 599, 601 (1992), citing *Linville v. Servisoft of Va.*, 211 Va. 53, 174 S.E.2d 785 (1970). However in *Linville*, the court stated that "the scope of permissible restraint is more limited between employer and employee than between seller and buyer. . . ." *Id.* at 55. In the case at bar, the restrictive covenant arises from both the sale of assets of Ball's practice and from the employment relationship. Due to the hybrid nature of these agreements, the court rejects Ball's argument that the documents must be interpreted in the light most favorable to him.

This does not, however, alter the duty of the court to carefully examine and strictly construe the terms of the documents. In doing so the court must "consider the plain meaning of the language of the parties used in the documents" to determine their intent. *Musselman v. Glass Works, L.L.C.*, 260 Va. 342, 346, 533 S.E.2d 919, 921 (2000). In this regard, Ball's argument that the words "termination" and "expiration" are not synonymous would, at first

blush, appear to have merit. Ball cites *Black's Law Dictionary* for the proposition that the terms have different meanings:

> *Termination*: With respect to a lease or a contract, term refers to an ending, usually before the end of the anticipated term of the lease of contract. . . .

*Black's Law Dictionary* 1471 (6th ed. 1990).

> *Expiration*: Cessation, termination from a mere lapse of time, as the expiration date of a lease. . . .

*Id.* at 579.

However, *Black's* further states that the definition for "termination" includes: "[e]nd in time or existence; close; cessation; conclusion." *Id.* at 1471; and that "expiration" includes "[c]oming to a close; termination or end." *Id.* at 579. The *American Heritage Dictionary of the English Language* (New College ed., 1981), cited by CHC, defines "termination" as the "spatial or temporal end of something; conclusion or cessation." It is clear that a determination of the meaning of these terms cannot be based upon definitions alone, and accordingly this court must consider the manner in which the words are employed in the documents.

Paragraph 6.3 of the PEA provides that "upon termination or expiration . . . the Physician waives any and all rights to [the patient's medical charts]." The reference to expiration and termination in this context appears to distinguish between the two. However, the inquiry does not end here, for "each contractual provision must be considered in the context of all other contractual provisions." *Clinch Valley*, 243 Va. at 289, 414 S.E at 601. The language used must be read "so as to give meaning to all the words; otherwise stated, [the court cannot] regard any language as meaningless, unless compelled to do so." *Paramount Termite Control Co. v. Rector*, 238 Va. 171, 174, 380 S.E.2d 922, 925 (1989).

Of particular significance are Paragraph 6 of the PEA and Paragraph 15 of the Noncompetition Agreement. Paragraph 6 states:

> 6. *Buy-Out Damages.* Notwithstanding anything to the contrary herein, the Noncompetition Covenant shall expire at the end of six (6) years from the Effective Date. If the Physician's employment with CHC is terminated prior to the expiration of the six (6) year period, pursuant to an event for which the Noncompetition Covenant is

enforceable pursuant to the terms of this Agreement, the physician shall be released from the Noncompetition Covenant for years five (5) and/or six (6) upon payment to CHC of the applicable amount set forth in Attachment A (the *"Buy-Out Damages"*).

While the PEA provides that Ball's term of employment ended on September 30, 2000, the Noncompetition Covenant does not expire until July 30, 2002, six years from the effective date. This paragraph plainly and unequivocally establishes a specific duration for the Noncompetition Agreement without any reference to "termination," "expiration," or other contingencies. Consequently, the case law from Minnesota, Colorado, Florida, and Indiana cited by Ball for the proposition that a noncompetition covenant cannot be enforced when the employment agreement has expired is not applicable.

Furthermore, the language in Paragraph 6 specifically provides for buy-out damages for years five and/or six of the Noncompetition Agreement. The only intent that can possibly be inferred from such a provision is continuation of the covenant after the PEA expired. For the court to reach any other conclusion, it would be forced to disregard explicit language contained in the documents, rendering it meaningless, in violation of the Supreme Court's ruling in *Paramount*.

Ball argues that this provision was intended to provide buy-out damages in the event that the covenant was enforced upon the end of his employment prior to its expiration. Ball contends that he could pay the buy-out damages at any point during the PEA if his employment was terminated, thereby rendering him able to immediately practice within the area restricted by the covenant. A reading of the plain language of the documents does not support this argument. Nowhere is language found that supports Ball's contention that he could pay buy-out damages for any period other than years five and six, and the court is not permitted to insert terms that are not expressly set forth in the contract. *See Lansdowne Devel. Co. v. Xerox Realty Corp.*, 257 Va. 392, 400, 514 S.E.2d 157, 161 (1999). Ball's position glosses over the unambiguous language of both Paragraph 6 and "Attachment A" and requires the court to ignore the express references to the length of the covenant and buy-out provisions for years five and six. If the language of the documents is "unambiguous and capable of only one reasonable construction, [the court must] read it according to its plain meaning." *Paramount*, 238 Va. at 174, 380 S.E.2d at 925. Whether any terms of the document are ambiguous is a determination for the court as a matter of law. *Musselman*, 260 Va. at 346, 533 S.E.2d. at 921; see also *Gordonsville Energy v. Virginia Elec. & Power*

*Co.*, 257 Va. 344, 512 S.E.2d 811, 816 (1999). This court does not find ambiguity in the documents before it. The only permissible interpretation that affords all terms their plain meaning is that the buyout provision applies only in the event that the PEA comes to its natural end and Ball rejects a reasonable offer for continued employment.

Further support for CHC's position that the covenant applies upon expiration of the PEA can be found in Paragraph 15, which states:

> Anything to the contrary herein notwithstanding Section 2 of this Agreement shall not be enforceable by CHC or its successors and assigns in the event that (i) that the Physician's employment is *terminated* pursuant to 5.3(f) of the Physician Employment Agreement; (ii) the physician's *termination* of employment with CHC pursuant to paragraph 5.4 of the Physician Employment Agreement, (iii) *termination* of Physician's employment with CHC under paragraph 5.6 of the Physician Employment Agreement upon Physician's exercise of the option granted therein to repurchase his or her Practice; or (iv) CHC fails, upon the *expiration* of the Term of Employment, to make a reasonable offer to continue the Physician's employment for a minimum two (2) year period.

In determining whether "expiration" as utilized in Paragraph 15 is consistent with "any termination" as used in Paragraph 2, this court must determine the party's intent. As stated in *Amos v. Coffey*, "'[t]he guiding light . . . is the intention of the parties as expressed by them in the words they have used, and the courts are bound to say that the parties intended what the instrument plainly declares'." 228 Va. 88, 92, 320 S.E.2d 335 (1984), quoting *Magann Corp. v. Electrical Works*, 302 Va. 259, 264, 123 S.E.2d 377, 381 (1962).

Paragraph 15 specifically enumerates the events that limit the application of the Noncompetition Covenant. Paragraph 15(i) refers to terminations that occur pursuant to PEA, § 5.3(f), termination by the board without cause prior to expiration of the PEA. Paragraph 15(ii) refers to PEA § 5.4 which states that the agreement "may be terminated immediately . . . upon the occurrence of any of the following events . . ." all of which would precede expiration. The same is true of PEA § 5.6, incorporated by Paragraph 15(iii), which references regulatory interventions that might occur *prior* to expiration of the PEA. Each of these subsections to Paragraph 15 incorporate by reference termination as defined in the PEA.

Paragraph 15(iv) on the other hand, expressly provides for nonenforcement following expiration if CHC fails to make a reasonable offer to extend Ball's employment. In considering this clause, the court is aided by CHC's analysis of the eventualities that could occur upon the expiration of Ball's employment contract. Ball could accept an offer from CHC for a new contract for at least two years, which would extend his employment through the end of the covenant. Second, CHC could fail to offer Ball continued employment, which would result in Ball being released from the covenant under this paragraph and there would be no need for the buy-out provision. Lastly, Ball could reject an offer of continued employment as occurred in the instant case. Were this court to agree with Ball's argument that expiration of the PEA terminated the covenant, then Paragraph 15(iv) would be meaningless. Ball would be released from the covenant regardless of whether or not CHC offered continued employment. As stated in *Paramount,* the court must lend meaning to all of the words the parties expressed in the documents whenever reasonably possible.

CHC's position is also supported by language in Appendix C to the PEA which states that "it is hereby agreed by CHC that the Physician may continue those Outside Activities in which he is currently engaged until the earlier of the next termination or renewal date of any contract under which the physician receives income." In this context the word "termination" must include the natural end of any then existing agreement, or otherwise state its expiration.

Finally, the court must reject Ball's reliance upon *Clinch Valley* as dispositive of this case. In *Clinch Valley* the Court strictly construed the employment contract language "termination of this agreement" as opposed to the language "any termination of employment" which appears in the buy-sell agreement before this court. The latter phrase can plainly include the natural expiration of employment while the former would not. Furthermore, the *Clinch Valley* contract did not expressly define the duration of the Noncompetition Covenant nor did it provide for "buy-out" post expiration. This court, when considering the mandate of *Clinch Valley* that language be "considered in the context of all other contractual provisions," 243 Va. at 289, 414 S.E.2d at 601, reaches the opposite result of that which was dictated by the terms of the *Clinch Valley* agreement.

This court finds no ambiguity in the use of the terms "expiration" and "termination" in the documents. "[A] document is not ambiguous 'merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement'." *Amos,* 228 Va. at 92, 320 S.E.2d 337, quoting *Wilson v. Holyfield,* 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). The mere fact that the parties could have used different, perhaps more precise,

language does not mean that there is an ambiguity, and one should not be created by default. The court is tasked with strictly construing the plain language of the documents to determine the intent of the parties. It is the determination of this court that the parties intended the Noncompetition Covenant to survive the expiration of the PEA when a reasonable offer to continue employment is made. The language "any termination of employment" appearing in Paragraph 2 of the Noncompetition Agreement was clearly intended to apply to the facts of this case. Accordingly, CHC's motion for partial summary judgment is granted and the motion of Ball for summary judgment is denied.