UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

AFCON, INCORPORATED, an Ohio
corporation,

    *Plaintiff-Appellant,*

v.

BELL BCI COMPANY,

    *Defendant-Appellee.*

No. 02-1914

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-02-80-A)

Argued: May 9, 2003

Decided: May 27, 2003

Before NIEMEYER and MOTZ, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Peter Daniel Welin, THOMPSON HINE, L.L.P., Colum-
bus, Ohio, for Appellant. Richard O'Shea Wolf, MOORE & LEE,
L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:** Scott A. Har-
vey, THOMPSON HINE, L.L.P., Washington, D.C., for Appellant.
Charlie C.H. Lee, MOORE & LEE, L.L.P., McLean, Virginia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In this diversity contract dispute, the general contractor on a construction project, Bell, BCI Company, enlisted the services of Afcon, Inc., to do work originally undertaken by another subcontractor. Dissatisfied with the amount received in payment from Bell, Afcon sued Bell for breach of contract and unjust enrichment. The district court granted summary judgment to Bell. We affirm.

I.

In July and August, 1999, Bell entered into two contracts with the Alexandria Sanitation Authority of Alexandria, Virginia, to serve as the general contractor for improvements to the city's wastewater treatment plant. Shortly thereafter, Bell entered into four written subcontracts with R&R Geo-Construction, Inc. in connection with the sanitation contracts. A few months later, R&R informed Bell that it could not perform its obligations under the four subcontracts. Shortly thereafter, Bell entered into discussions with Afcon.

On November 15, 1999, Afcon sent a letter to Bell that offered to provide the sheeting and shoring work covered by two of the four R&R subcontracts and to split profits arising from that work, 30% to Bell, 70% to Afcon. On November 23, 1999, Bell responded by sending Afcon an "Agreement Outline," which states that "[a]s Bell is considering entertaining a contract with Afcon for . . . the following must be provided and considered prior to agreement;" the list includes various terms such as rates and applicability for per diems, insurance, etc. The Agreement Outline also states that "Supplement A previously written for each contract will apply in its entirety." "Supplement A" was an attachment to the original R&R subcontracts, which contains a number of requirements, including that the subcontractor furnish a payment and performance bond.

On November 29, 1999, Afcon replied to Bell's Agreement Outline. Afcon's response provided various rates and per diem amounts, described an insurance arrangement, and stated that "[d]ue to unusual circumstances, the contract clauses are to delete any reference to Bond, liquidated damages or any punitive damages to Afcon, Inc." Bell never responded to the November 29 letter. On December 1, 1999 Afcon sent two letters to Bell proposing to furnish all labor, equipment and materials to install the sheeting and shoring systems covered by two of the four R&R subcontracts. Afcon acknowledges that Bell never accepted the terms of these letters.

On January 8, 2000, Afcon wrote still another letter to Bell discussing arrangements for performing the piling work covered by the remaining two R&R subcontracts. This letter stated that Afcon had arranged to work with WM Brode Co. for pile driving, and noted "that another local piling contractor has been brought in the picture." Afcon concedes that Bell never accepted the January 8th proposal. Instead, Bell wrote Afcon that its submission was not in the proper format and instructed Afcon to resubmit its bid. Afcon resubmitted its proposal, to which Bell did not respond. Sometime thereafter Bell entered into a contract with another subcontractor, Midlantic Piling, Inc. to perform some of the work covered by the original piling contracts.

Beginning sometime on or before November 15, 1999, Afcon performed sheeting and shoring work on the Project. Afcon sent weekly forms entitled "reimbursement" to Bell, detailing labor costs, per diem expenses, and overhead expenses incurred in performing this work. Bell regularly paid Afcon all of the requested amounts. Afcon contends that it also submitted monthly pay requests to Bell "indicating percentages of work completed pursuant to a schedule of values for the sheeting and shoring work." Afcon further asserts that "these pay requests indicated the amount due on a percentage complete basis against the total subcontract amounts, less the amount of wage advances, expense advances, overhead advances, material expenses and equipment charges." However, Afcon did not produce any monthly statements substantiating this contention.

On August 16, 2000, after the sheeting and shoring work had been completed, Afcon submitted a final invoice to Bell indicating an

amount due based on the R&R subcontract amounts. Bell refused to pay the amount listed on this final invoice.

On January 15, 2001, Afcon sued Bell, alleging *inter alia* unjust enrichment and breach of contract. The district court granted summary judgment to Bell, finding that it had paid Afcon the fair value of all services rendered by Afcon and the parties had never agreed upon a contract. Afcon timely appealed.

## II.

Because Bell paid all amounts charged by Afcon for labor costs, per diem costs, and overhead expenses in connection with the sheeting and shoring work Afcon performed, the district court correctly held that Afcon's quantum meruit claim fails.

Afcon's contract claim requires a bit more discussion. Afcon contends that Bell breached a contract to pay it on the same terms as Bell's original contract with R&R. Under Virginia law, which the parties agree applies here, "[u]ntil the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996). While "the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts," *Marefield Meadows, Inc. v. Lorenz*, 427 S.E.2d 363, 365 (Va. 1993) (internal quotation marks and citation omitted), "[i]n the absence of circumstances from which an acceptance may be implied, an acceptance will not be presumed from a mere failure to decline a proposal." *Boone v. Standard Accident Ins. Co.*, 66 S.E.2d 530, 535 (Va. 1951) (citations omitted); *see also Andrews Large & Whidden, Inc. v. Capman & Wood, Inc.*, 37 Va. Cir. 251, 254-5 (1996) (citing *Boone* for same proposition).

Applying these principles to the facts at hand inevitably leads to the conclusion that the parties never entered into a contract. Indeed, during his deposition, Atul Gupte, the sole owner of Afcon, admitted facts that preclude finding a contract between Bell and Afcon. Gupte conceded that as of November 23, Bell and Afcon had not reached an agreement on the terms of Afcon's work. Gupte also admitted that Bell never responded to Afcon's letter of November 29 or accepted

the terms of Afcon's December 1 letters. Finally, Afcon's January 8 letter constitutes an offer, for which there is no evidence of acceptance by Bell. For these reasons, we agree with the district court that Afcon has failed to offer any evidence from which a reasonable jury could conclude that Afcon entered into a contract with Bell.

### III.

Accordingly, the judgment of the district court is

*AFFIRMED*.