# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0326-25-2**

---

KIRK T. SCHRODER

v.

LORI SCHELIN, N/K/A
LORI LYNN

---

Present: Chief Judge Decker, Judges Malveaux and Duffan

Argued at Richmond, Virginia

Opinion Issued April 14, 2026[*]

---

**FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY**
Timothy K. Sanner, Judge

Bradley P. Marrs (Marrs & Henry, on briefs), for appellant.

Scott D. Cardani (Critzer Cardani, PC, on brief), for appellee.

---

**MEMORANDUM OPINION BY**
**JUDGE KEVIN M. DUFFAN**

Kirk T. Schroder appeals the trial court's judgment dismissing his complaint against Lori

Lynn[1] seeking payment on two alleged promissory notes. Finding no error, we affirm.

BACKGROUND[2]

Lynn and Schroder were both members of a "Mystery School" operated out of the

Aquarian Bookshop in Richmond, Virginia, owned by John Oliver. Schroder was an attorney

who "did a lot of pro bono work for members" of the school. According to Lynn, Schroder

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Lynn was previously known as Lori Schelin.

[2] "[W]e review the facts in the light most favorable to [Lynn], the prevailing party below." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 (2022).

"help[ed her] with different court matters" and sometimes gave her legal advice. Lynn never paid Schroder for legal services, and he never asked her to.

Lynn separated from her husband in June 2017, which led to protracted divorce proceedings. Oliver asked members of the school to help pay Lynn's attorney fees, and about ten members agreed to help. Members gave money to a trust account controlled by Schroder, who wrote checks from the account to pay Lynn's fees. According to Schroder, when the trust "fund got low, there was a request for people to replenish it," which members willingly did.

In June 2017, Schroder wrote to Lynn's attorney that Lynn "ha[d] a benefactor who [was] sending funds to [Schroder's] law firm's trust account" to pay the fees. Lynn testified that Schroder told her "not to worry about . . . [her] legal fees" because "they would be taken care of." She interpreted that statement to mean that she "wasn't going to have to pay any of [her] legal fees." She claimed that she offered to pay her own fees "many times" but that Schroder consistently told her "no, no, I got it. I'll take care of it." She claimed that she "never communicated with anybody that donated funds" and "never asked anyone for a dime." Accordingly, she viewed the payments as gifts, not loans.

Schroder admitted that he and other group members gave Lynn "funds that were just considered gifts and were not documented as loans" but testified that "it just got to a point where the dollar amount was getting so high that, then, it was understood that these needed to be loans." He also claimed that Lynn wanted the payments to be documented as repayable loans and that he acceded to her request.

Schroder drafted two promissory notes and sent them to Lynn to sign.[3] The first note, dated July 7, 2017, reflects that Lynn promised to pay Schroder $2,000 plus interest in

_____

[3] Although the notes were dated more than nine months apart, Schroder testified that he sent both notes to Lynn together. Schroder also drafted promissory notes for other members who had paid into the trust, none of which are part of this lawsuit.

installments starting "no later than six months after the final divorce decree [was] entered." The second note, dated March 20, 2018, was substantially the same but was for $7,154.47 plus interest. Lynn signed both notes but did not return them to Schroder.

Lynn and Schroder provided different rationales for the notes. Schroder testified that Lynn asked him to draft the notes. He believed she wanted "to confirm the loan" and "use them in the divorce case in the circuit court." Lynn did in fact produce the notes during discovery in her divorce case as evidence of her debts. She testified during this litigation that she misrepresented the notes during her divorce—presumably to inflate her debts—and that the money was always intended as gifts, not loans.

According to Lynn, Schroder told her that she needed to sign the promissory notes "for the file." She did not know what he meant but signed them anyway. She "found out later" that he wanted to use the notes as "[o]ptics for [a] defamation suit" he had filed against her husband. The defamation trial occurred on October 31, 2018. Lynn testified at the defamation trial that she "owe[d] a lot of money to a lot of different people . . . related to [her] attorney's fees," that "[p]eople donated, loaned [her] money in different increments," and that she signed several promissory notes.[4]

According to Lynn, Schroder told her after the defamation suit ended "that the [notes] could go in the trash," that she "could shred them," and that "[o]bviously, [she did not] have to pay them." So, she shredded the originals. Schroder denied telling her that she could do so. He testified that he was not concerned about getting the originals back but "it was something that [he] knew was still outstanding."

---

[4] Schroder unsuccessfully objected at the defamation trial to Lynn's testimony about the promissory notes.

Lynn obtained a final divorce decree in September 2018.  Schroder did not ask Lynn for repayment at that time, nor did any other Aquarian member who gave funds.  As time went on, however, Lynn's relationship with Oliver and the school became strained.  Lynn withdrew from the school in July 2022 and rebuffed several invitations to a "roundtable" with Oliver, the last of which came in August 2023.

After obtaining copies of the notes from the file in Lynn's divorce case, Schroder wrote to Lynn in September 2023, demanding that she repay the notes within 14 days.  When Lynn did not repay, Schroder filed a warrant in debt in the general district court, which he later appealed to the circuit court.

The circuit court held a bench trial in December 2024.  Schroder argued in closing that "[t]he only legally cognizable defense . . . would be to allege fraudulent inducement."  The court responded that Lynn was "not declaring fraud[]" or claiming that "she was misled into signing" the notes but was instead claiming that the notes were "just a sham from the word go, really." Schroder persisted in arguing that Lynn had failed to demonstrate fraud.  In closing, Lynn clarified that she was "not claiming that she was fraudulently induced" and that "the real question is, was there assent to this contract?"

The circuit court found the evidence presented referred to the payments as "fundraising, donations[,] and contributions, which implies that they [were] gifts" and not loans. The court further noted that the details of the notes were not determined until after the contributions were made.  Finally, the court found it significant that Schroder demonstrated no concern that the notes be signed and returned to him and made no effort to collect the notes until after the relationship soured between Lynn and the school.  "In the end, the court [was] unconvinced that the[] notes represented true obligations to pay" and found that they were "more likely created for

- 4 -

the purpose of hiding gifts and to aid [Lynn] in her defense case in which [Schroder] was substantially involved."[5]  Accordingly, the trial court dismissed the case.

ANALYSIS

Schroder's five assignments of error are best examined in two general categories: The first are challenges to the circuit court's final judgment in Lynn's favor.  The second are challenges to a series of evidentiary rulings made by the circuit court.

I.  The Notes' Enforceability

Schroder contends that the circuit court ruled against him on the theory that he fraudulently induced Lynn to sign the promissory notes.  He argues that the court erred in doing so because (1) Lynn failed to preserve fraud in the inducement as an affirmative defense; and (2) the trial court did not apply the heightened standard applicable to fraud claims.  Those arguments suffer from a faulty premise, however, because fraud in the inducement was neither Lynn's theory of the case nor the basis for the trial court's ruling.

"An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient."  Rule 5A:20(c)(2).  Insufficient assignments of error are dismissed.  *Id.*  Fraud in the inducement occurs when one party induces another party to enter into what the defrauded party believes is a legitimate contract by misrepresenting a material fact. *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362 (2010).  Here, this is not what the circuit court found.  Rather, the circuit court made specific findings that the notes were not "true obligations to pay" and were "more likely created for the purpose of hiding gifts" and to aid the parties in separate litigation.  After considering the divergent testimony between the parties, the court found that Schroder and Lynn agreed to create only an appearance that they had entered into a contract, but never intended to be bound by its terms.  Accordingly, Schroder's first two

---

[5] Presumably, the court meant to refer here to Lynn's divorce case.

assignments of error relating to fraud or fraud in the inducement do not challenge a ruling that was made by the circuit court and therefore must be dismissed.

Turning to Schroder's challenges to the validity of the contract in his fourth and fifth assignments of error, "whether [a valid] contract exists is a pure question of law." *Williams v. Janson*, 301 Va. 375, 380 (2022) (alteration in original) (quoting *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 42 (2015)). In reviewing the circuit court's judgment, however, this Court "give[s] the findings of fact made by a trial court that heard the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a jury verdict." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 287 (2022) (quoting *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006)). "[D]etermining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). This Court will not "disturb the [fact finder's] credibility determination unless [the witness's] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Abouemara v. Commonwealth*, 77 Va. App. 719, 731 (2023) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). A witness's inconsistent statements do not render her testimony inherently incredible as a matter of law. *Kelley*, 69 Va. App. at 626.

"It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of *all* contracts." *Phillips v. Mazyck*, 273 Va. 630, 636 (2007) (emphasis added) (quoting *Lacey v. Cardwell*, 216 Va. 212, 223 (1975)). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Id.* (quoting *Persinger & Co. v. Larrowe*, 252 Va. 404, 408 (1996)).

"[W]hether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995).

Lynn and Schroder provided competing testimony, but determining the credibility of the witnesses was within the circuit court's purview. Lynn testified that Schroder told her that she did not have to repay the promissory notes and that she could shred them. Lynn did so and never returned the notes to Schroder. Schroder did not ask for repayment until Lynn's falling out with the school years after the notes were allegedly due. The circuit court implicitly found Lynn more credible in its determination that there was no meeting of the minds between the parties necessary to form a valid contract. *See Phillips*, 273 Va. at 633-34 (finding a lack of mutuality and noting that "Marcari's retention of both the original and the revised agreement, even though he signed each document, [was] not inconsequential in light of the specific instructions . . . directing him to sign the document and send it to" another party). Lynn testified that she did not ask anyone to donate funds to pay her attorney fees and the promissory notes were a later arrangement made for reasons other than repayment. That testimony is bolstered by Schroder's statement to Lynn's divorce counsel that Lynn had a "benefactor" who was paying her legal fees. *See Benefactor*, *Webster's Third New International Dictionary* (2002) (defining a "benefactor" as "one that gives help or confers a benefit" or "one that makes a gift or bequest").[6] Accepting the circuit court's credibility determinations, the parties objectively manifested an intent not to be bound by the terms of the notes. As a result, the circuit court did not err in concluding that there was no contract.

## II. Schroder's Evidentiary Arguments

Schroder also challenges a series of evidentiary rulings made by the circuit court in his third assignment of error. Specifically Schroder argues that the circuit court should have

---

[6] Schroder admitted on cross-examination that he "underst[oo]d what that term means."

excluded: (1) Schroder's June 2017 email to Lynn's attorney stating that Lynn had a "benefactor" who was paying her legal fees; (2) Lynn's cross-examination questions to Schroder about how he calculated the amount of debt owed; (3) Schroder's 2020 statements about what he believed to have been "unfair";[7] (4) Lynn's testimony about how she interpreted Schroder's statements about the notes; and (5) Lynn's testimony about her friction with Oliver and the mystery school.

"It is well-settled that decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." *Shahan v. Commonwealth*, 76 Va. App. 246, 255 (2022) (quoting *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021)). Underpinning this review is a "bell-shaped curve of reasonability," which "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Warren v. Commonwealth*, 76 Va. App. 788, 799 (2023) (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)), *aff'd per curiam*, 303 Va. 60 (2024).

Schroder primarily argues that the admitted evidence is irrelevant. Evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Relevant evidence is generally admissible. Va. R. Evid. 2:402(a). Under that low bar, the trial court did not abuse its discretion by admitting the evidence of which Schroder complains. Evidence such as Schroder's characterization of the funds as originating from a "benefactor," Lynn's understanding of the notes based on Schroder's statements, or Lynn's relationship with the school shortly before

---

[7] For example, Schroder wrote that he "thought it was unfair to pay for things when [he] did not have the funds" or "to pay for lawyer bills before [he] could pay for [his] own mortgage or basic monthly bills."

Schroder demanded repayment were all relevant to whether the parties had a meeting of the minds concerning the notes, as was addressed in the previous section.[8]

### III. Attorney Fees

Finally, Lynn asks for her attorney fees in connection with this appeal. The decision to award attorney fees incurred on appeal is within the sound discretion of this Court. *See* Rule 5A:30(b)(2)(C). The Court "award[s] appellate fees only in the unusual case where the arguments on appeal are 'not fairly debatable under any reasonable construction of the record or the governing legal principles.'" *Ugarte v. Ugarte*, 84 Va. App. 50, 79 (2025) (quoting *Cabral v. Cabral*, 62 Va. App. 600, 613 (2013)). Because we find the arguments here are fairly debatable, we exercise our discretion and deny Lynn's request for attorney fees.

### CONCLUSION

Finding no error, we affirm the circuit court's judgment.

*Affirmed.*

---

[8] Schroder claims that Lynn's testimony about her understanding regarding the notes violated the parol evidence rule. Schroder did not raise the parol evidence rule to the trial court. *See* Rule 5A:18 (providing that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling"). Schroder also raises a hearsay challenge to some of Lynn's testimony. Although the basis of the challenge is not clear from his opening brief, Schroder's hearsay objection below was to Lynn's testimony that Oliver "told [her] that he had [Schroder] do a penis puppet show at the meditation retreat." The court allowed the statement for the "limited purpose" of showing why Lynn left the mystery school. The court's comment makes clear that the court did not receive the testimony for the truth of the matter asserted, specifically that Schroder did "a penis puppet show."